# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ DEC 1 1 2009 ★

BROOKLYN OFFICE

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | Index No. | |
| Plaintiff, | **Complaint** | |
| -against- | | |
| HANA SALAMON, JOEL KATZ, Individually and as Trustee for the HANA FAMILY TRUST, AARON KNOPFLER, Individually and as Trustee for the HANA FAMILY TRUST, and the HANA FAMILY TRUST, | | |
| Defendants. | | |

CV 09 - 5428

ROSS, J.

GOLD, M.J.

Plaintiff, American General Life Insurance Company ("American General"), having its principal place of business at 2929 Allen Parkway in Houston, Texas 77019, by and through its undersigned counsel and by way of Complaint against the defendants, says:

**INTRODUCTION**

1.      By this action, American General seeks a declaration of its rights and obligations with respect to Flexible Premium Adjustable Life Insurance Policy No. U10022254L (the "Policy") issued to the Hana Family Trust (the "Trust") and insuring the life of Hana Salamon ("Ms. Salamon" or the "Insured"). American General also seeks as additional and/or alternative relief an award of compensatory and exemplary damages, attorneys' fees, and costs jointly and severally against all defendants.

2.      The Policy should be rescinded based on defendants' intentional fraud in procuring the Policy and the lack of insurable interest in the life of the Insured, and American General should be awarded compensatory and exemplary damages, including

2596179.1

fees and costs, to punish defendants for their egregious and illegal conduct and to make an example to deter others from similar conduct.

## JURISDICTION, VENUE AND THE PARTIES

3.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. 1332 based on diversity of citizenship of the parties and the amount in controversy exceeding $75,000.00.

4.    Venue lies within this District under the provisions of 28 U.S.C. 1391(a) because defendant Hana Salamon resides in this District.

5.    American General is a Texas corporation duly authorized to transact the business of insurance in the State of New York, with its principal place of business in the State of Texas.

6.    Defendant Hana Salamon is a New York domiciliary with a residence address of 4910 17th Avenue, Brooklyn, New York 11204.

7.    Upon information and belief, the Trust is a trust formed under the laws of a state other than Texas and is a citizen of the State of New Jersey, with a last known address of 750 Forest Avenue, Lakewood, New Jersey 08701.

8.    Upon information and belief, defendant Joel Katz is a citizen of the State of New Jersey with a last known address of 750 Forest Avenue, Lakewood, New Jersey 08701.

9.    Upon information and belief, defendant Aaron Knopfler is a citizen of the State of New Jersey with a last known address of 750 Forest Avenue, Lakewood, New Jersey 08701.

2596179.1

2

## JURY TRIAL

10.     Plaintiff demands a jury trial on all issues triable to a jury.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**A.     Financial Misrepresentations**

11.     On December 28, 2007, American General issued the Policy with a death benefit of 8.5 million dollars.

12.     The Insured on the Policy is defendant Hana Salamon.

13.     The owner of the Policy is the Hana Family Trust dated December 6, 2007 with a Tax Identification Number of 26-6161312.

14.     The Trustees of the Trust are Aaron Knopfler and Joel Katz (the "Trustees").

15.     American General issued the Policy on the basis of an application completed and executed by Hana Salamon on December 20, 2007.

16.     Question 1 on Part A of the Life Insurance Application requested that defendant Hana Salamon set forth her personal earned income, household income and net worth.

17.     In response to Question 1, defendant Hana Salamon reported her personal earned income as $150,000 - $300,000, her household income as $470,000, and her net worth as $14 million.

18.     On a separate "Financial Questionnaire" section of the Application, Ms. Salamon listed an earned income of $150,000 from art sales; an unearned income of $320,000 from interest, dividends and real estate; a total income of $470,000; and a net

worth of $14 million. Ms. Salamon also listed her reason for purchasing $8.5 million in life insurance as "estate preservation."

19.     On information and belief, Hana Salamon does not have a personal income of $150,000-300,000, a household income of $470,000 and a net worth of $14 million.

20.     When an investigator from Infolink Inspection Reports, an investigative agency retained by American General, contacted Ms. Salamon prior to the issuance of the Policy to confirm her liquid net worth, she informed him that she is the owner of two 16-unit apartment complexes in Brooklyn, New York, with an estimated $12 million cumulative market value. The Infolink Report also indicates that Ms. Salamon reported owning a primary residence valued at $750,000.

21.     On information and belief, the financial representations in the Policy Application are false.

22.     On information and belief, Hana Salamon does not have a total income of $470,000 and a net worth of $14 million.

23.     During an investigation, American General discovered material misrepresentations concerning Ms. Salamon's financial status.

24.     First, in a December 17, 2007 Application for Life Insurance to Metropolitan Life Insurance Company (the "MetLife Application"), Ms. Salamon provided financial information that conflicts with her American General Application. Specifically, she indicated an income of $100,000 instead of $150,000-300,000 and a net worth of $10 million instead of $14 million.

4

25.     American General's investigation also indicates that the Insured may have falsely represented owning two 16-unit apartment complexes in Brooklyn, New York. On information and belief, Hana Salamon and her husband Martin Salamon do not own any property. Net worth and property ownership database searches under Hana Salamon and Martin Salamon did not indicate ownership of any real estate.

26.     American General's application states that it uses representations regarding the insured's financial status to determine eligibility for coverage. The executed application states that the information regarding the Insured's personal finances will be used by American General to determine eligibility for insurance and that any misrepresentation contained in the application and relied on by American General may be used to reduce or deny a claim or void the policy if it is within the contestability period and materially affects the acceptance of risk. The Application also contains a fraud warning disclosure that states:

> Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

27.     Accordingly, on February 5, 2009, American General sent a rescission letter to Hana Salamon, requesting voluntary rescission without resorting to court intervention.

28.     Had defendant Hana Salamon identified her actual net worth and income, American General would not have issued the Policy.

**B.      Other Insurance Misrepresentations**

29.     Upon information and belief, defendant Hana Salamon also made material misrepresentations concerning her life insurance status.

2596179.1

30.     In Part A, Section 16 of the Application entitled "Existing Coverage," signed and dated December 13, 2007, Ms. Salamon indicated that she had one existing or pending annuity or life insurance policy and noted a 1970 insurance policy in the amount of $200,000. Also, in the Policy Acceptance and Amendment of Application Form dated December 28, 2007, Ms. Salamon represented that she had not acquired any knowledge or belief that any statements made in the Application are now inaccurate or incomplete.

31.     Upon information and belief, on December 17, 2007, prior to signing the Policy Acceptance and Amendment of Application Form attesting that the representations in Ms. Salamon's application were accurate, she submitted an application for a $5 million life insurance policy to MetLife.

32.     Accordingly, it is evident that when Ms. Salamon signed the American General Policy Acceptance and Amended Application Form attesting that nothing in her American General Application had changed, Ms. Salamon in fact had a pending life insurance policy application with MetLife.

**C.      Other Concerns**

33.     An investigation revealed other concerns, including:

- On Ms. Salamon's American General Policy Application, she listed her date of birth as 01/**21**/1931 but on her MetLife Policy Application, she listed her date of birth as 01/**12**/1931.

- On Ms. Salamon's American General Policy Part A, she listed her Social Security Number as 319-82-929**5**. On Ms. Salamon's American General Application Part B, she listed her Social Security number as 319-82-91**96**. On her MetLife Policy

Application, she listed her Social Security Number as 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. Each of the social security numbers listed is slightly different.

34.     On information and believe, the insured may have misrepresented her health status on her life insurance application.

## THE MISREPRESENTATIONS WERE MATERIAL TO AMERICAN GENERAL'S DECISION TO ISSUE THE POLICY

35.     The misrepresentations in Ms. Salamon's American General Application, Financial Questionnaire, and each and every additional misrepresentation made throughout the underwriting process regarding Ms. Salamon's financial status, health status, other insurance policies, and the purpose of the Policy at issue affected American General's decision to issue and deliver the Policy as written and to accept the risks upon which issuance and delivery of the Policy was based.

36.     If American General had been aware of Ms. Salamon's true financial status and the true purpose of the Policy, American General would not have issued the Policy.

## THE TRUST LACKS INSURABLE INTEREST

37.     American General avers, upon information and belief, that the Trust was created by investors that have no legal insurable interest in the preservation of the Insured's life and that the trust did procure the Policy on the life of Hana Salamon while having no legal insurable interest in the life of Ms. Salamon.

## COUNT I
### (Declaratory Relief)

38.     American General re-alleges and re-incorporates by reference the preceding paragraphs.

39.    An actual controversy exists between American General and Defendants concerning their respective rights and duties under the Policy.

40.    American General contends that because of the material and fraudulent misrepresentations regarding Ms. Salamon's personal income, net worth, the purpose of the Policy, the existence of other pending insurance applications, and her health status, the Policy is void *ab initio* and of no force and effect since its inception, and American General never has and never will become liable to anyone there under.

41.    American General contends that because the trust lacks an insurable interest in the life of Ms. Salamon, the Policy is void *ab initio* and of no force and effect since its inception, and American General never has and never will become liable to anyone there under.

42.    A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

## COUNT II
### (Fraud – Rescission)

43.    American General hereby re-alleges and re-incorporates by reference the preceding paragraphs.

44.    The information contained in the application was false and failed to disclose Ms. Salamon's true personal income, net worth, status regarding other insurance, and health status.

45.    The information contained in the application was false and failed to disclose the true intended purpose of the Policy.

46.     The responses to American General's investigator during the application process were false and failed to disclose Ms. Salamon's true personal income, net worth, and purpose in obtaining the Policy.

47.     Ms. Salamon's true financial status, including personal income and net worth, which was not disclosed in the application, was material to the risk undertaken by American General in issuing the Policy as written and was relied upon by American General in issuing the Policy.

48.     The true purpose of the Policy, as requested in the application, which was not disclosed in the application, was material to the risk undertaken by American General in issuing the Policy as written and was relied on by American General in issuing the Policy.

49.     The Insured's insurance status and health status, as requested in the application, which was not disclosed in the application, was material to the risk undertaken by American General in issuing the Policy as written and was relied on by American General in issuing the Policy.

50.     American General's reliance upon the material misrepresentations and omissions in the Application was reasonable.

51.     If the defendants had fully and completely disclosed Ms. Salamon's personal income, net worth, purpose of the policy, other insurance, and health status, or if the true facts had otherwise been made known by them before or at the time of issuance or delivery of the Policy, the Policy would not have been executed, issued or delivered by American General and the premiums for the Policy would never have been accepted by American General.

2596179.1

9

52.     The material misrepresentations and omissions set forth above were made knowingly by each defendant or with the aid and comfort of each defendant with the intention of misleading American General into issuing the Policy, which each defendant knew would not have been issued but for the fraud.

53.     Because of the foregoing material misrepresentations and failure to disclose, the Policy is void *ab initio*, and of no force and effect since its inception, and American General never has been and never will become liable to anyone there under.

## COUNT III
**(Fraud – Damages)**

54.     American General hereby re-alleges and re-incorporates by reference the preceding paragraphs.

55.     American General has sustained damages as a result of the misrepresentations, non-disclosure or other concealment.

## COUNT IV
**(Fraud – Lack of Insurable Interest)**

56.     American General hereby re-alleges and re-incorporates by reference the preceding paragraphs.

57.     At all relevant times, including but not limited to the date of issuance of the Policy, the Trust lacked any insurable interest in the life of Ms. Salamon.

58.     In fact, upon information and belief, the sole purpose for creation of the Trust was to further the efforts of the defendants to circumvent applicable insurable interest laws and public policy.

59.     Therefore, the Policy is void *ab initio* and of no force and effect since its inception and American General never has been and never will become liable to anyone there under.

## COUNT V
### (Negligent Misrepresentation)

60.     American General hereby re-alleges and re-incorporates by reference the preceding paragraphs.

61.     Defendant Hana Salamon supplied false information on her insurance application.

62.     Defendant Hana Salamon failed to use reasonable care or competence in obtaining the information or validating that information.

63.     Plaintiff relied on the information in the insurance application.

64.     Plaintiff was justified in relying on the information regarding net worth, income, purpose in obtaining the Policy, status regarding other insurance, and health status.

65.     Plaintiff was financially harmed by relying on the insurance application and by issuing the Policy when it otherwise would not have if there had been full disclosure on the insurance application.

66.     Defendants failed to use reasonable care with regard to reporting the information regarding net worth, income, purpose in obtaining the Policy, status regarding other insurance, and health status.

67.     Plaintiff relied on and acted on the false information by issuing and maintaining the Policy when it otherwise would not have if there had been full disclosure.

68.     Plaintiff was harmed as a direct result of the false representations and omissions.

## COUNT VI
### (Breach of Good Faith and Fair Dealing)

69.     Plaintiff re-alleges and reincorporates by reference the preceding paragraphs.

70.     Defendant Hana Salamon had a duty to act in good faith when completing the insurance application for the Policy.

71.     Defendant Hana Salamon breached her duty to act in good faith by including material misrepresentations and/or omissions on the Policy application.

72.     Plaintiff has been damaged by defendant Hana Salamon's breach.

73.     Defendants Hana Salamon, Joel Katz, Aaron Knopfler, and the Hana Family Trust breached their duty to act in good faith with regard to their involvement in the procurement and maintenance of the Policy.

74.     Plaintiff has been damaged by the defendants' breach.

## COUNT VII
### (Interpleader)

75.     Plaintiff re-alleges and reincorporates by reference the preceding paragraphs.

76.     If American General is entitled to rescind the Policy, a refund of premium payments, less costs and attorney's fees for this litigation, costs of the investigation, and costs of underwriting and administering the Policy, must be made.

77.     American General is now in the position of addressing potentially conflicting claims by competing claimants for the refund of premiums. Upon information

and belief, defendant stakeholders Hana Salamon, the Trust, Aaron Knopfler and Joel Katz may be entitled to portions of the refund of premiums from the Policy. Accordingly, in order to protect against multiple and inconsistent claims from defendants as well as exposure to double or multiple liability, American General respectfully files this Interpleader action.

78.     American General has in its possession all premiums paid plus interest under the Policy.

79.     American General is obligated to disburse these funds, less costs and attorney's fees for this litigation, costs associated with the underwriting, issuance, and administration of the Policy and the cost of investigating the assertions in the Policy, to the appropriate party because it is entitled to rescission of the Policy.

80.     American General is unsure which party is entitled to the premium funds.

81.     American General may be subject to multiple liability by conflicting claimants without further order of this Court.

82.     American General is a mere stakeholder and has no interest in the premium refunds from the Policy.

## **Prayer for Relief**

WHEREFORE, plaintiff American General Life Insurance Company prays for judgment of the Court against defendants for the following relief:

1.     Rescission of the American General Policy;

2.     A declaration that the Policy is void;

3.      An Order that defendants answer this Complaint for interpleader and litigate or settle among themselves their rights and claims to the premium refund from the Policy;

4.      An Order discharging American General from all further liability relating to the refunds of premiums from the Policy;

5.      All reasonable attorney's fees and costs pursuant to 28 U.S.C. 1335 and 2361 and Federal Rule of Civil Procedure 22, incurred in bringing this lawsuit. <u>Ellington v. EMI Music Publishing, et al.</u>, 282 F. Supp. 2d 192 (SDNY 2003).

6.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation of the accuracy of the assertions in the Policy.

7.      Any other relief as the Court may deem just and equitable.


Dated:          December 11, 2009
                White Plains, New York

                _____
                Michelle M. Arbitrio
                Wilson Elser LLP
                Attorneys for Plaintiff
                American General Life Insurance Company
                3 Gannett Drive
                White Plains, NY 10604
                Tel. 914.872.7788
                Fax. 914.323.7001
                Email. michelle.arbitrio@wilsonelser.com

# Exhibit 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>  vs.<br><br>HANA SALAMON, JOEL KATZ, Individually and as Trustee for the Hana Family Trust, AARON KNOPFLER, Individually and as Trustee for the Hana Family Trust, and the HANA FAMILY TRUST<br><br>      Defendants. | Docket No.: 09-cv-5428<br><br><br>**ANSWER** |

Defendants, Hana Salamon, Joel Katz, Individually and as Trustee for the Hana Family Trust, Aaron Knopfler, Individually and as Trustee for the Hana Family Trust, and the Hana Family Trust, as and for their Answer to plaintiff's complaint, by their attorneys, Schindel, Farman, Lipsius, Gardner & Rabinovich LLP, state as follows:

  1. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the complaint.

  2. This paragraph contains legal conclusions to which no response is required.  To the extent that a response is required and to the extent there are factual allegations, then deny the allegations contained in paragraph 2 of the complaint.

  3. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the complaint.

  4. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the complaint.

5.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the complaint.

6.  Deny the allegations contained in paragraph 6 of the complaint.

7.  Deny the allegations contained in paragraph 7 of the complaint except aver that the trust has a New Jersey address and is governed by the laws of New York.

8.  Admit the allegations contained in paragraph 8 of the complaint.

9.  Deny the allegations contained in paragraph 9 of the complaint.

10. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the complaint.

11. Admit the allegations contained in paragraph 11 of the complaint.

12. Admit the allegations contained in paragraph 12 of the complaint.

13. Admit the allegations contained in paragraph 13 of the complaint.

14. Admit the allegations contained in paragraph 14 of the complaint.

15. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the complaint.

16. Neither deny nor admit the allegations contained in paragraph 16 of the complaint and refer to the application, which speaks for itself.

17. Neither deny nor admit the allegations contained in paragraph 17 of the complaint and refer to the application, which speaks for itself.

18. Neither deny nor admit the allegations contained in paragraph 18 of the complaint and refer to the application, which speaks for itself.

19. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the complaint.

20. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the complaint.

21. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the complaint.

22. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the complaint.

23. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the complaint.

24. Neither deny nor admit the allegations contained in paragraph 24 of the complaint and refer to the applications, which speak for themselves.

25. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the complaint.

26. Neither deny nor admit the allegations contained in paragraph 26 of the complaint and refer to the application, which speaks for itself.

27. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the complaint.

28. Deny the allegations contained in paragraph 28 of the complaint.

29. Deny the allegations contained in paragraph 29 of the complaint.

30. Neither deny nor admit the allegations contained in paragraph 30 of the complaint and refer to the application, which speaks for itself.

31. Neither deny nor admit the allegations contained in paragraph 31 of the complaint and refer to the applications, which speak for themselves.

32. Neither deny nor admit the allegations contained in paragraph 32 of the complaint and refer to the application, which speaks for itself.

33. Neither deny nor admit the allegations contained in paragraph 32 of the complaint and refer to the applications, which speaks for themselves

34. Deny the allegations contained in paragraph 34 of the complaint.

35. Deny that there were material representations and deny knowledge or information sufficient to form a belief as to whether a American General would have issued

36. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the complaint.

37. Deny the allegations contained in paragraph 37 of the complaint.

## AS TO COUNT I

38. Answering defendants incorporate by reference their answers to paragraph 1 through 37 of the complaint as if the same were set forth at length herein.

39. Deny the allegations contained in paragraph 39 of the complaint.

40. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the complaint.

41. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the complaint.

42. Admit the allegations contained in paragraph 42 of the complaint.

## AS TO COUNT II

43. Answering defendants incorporate by reference their answers to paragraph 1 through 42 of the complaint as if the same were set forth at length herein.

44. Deny the allegations contained in paragraph 44 of the complaint.

45. Deny the allegations contained in paragraph 45 of the complaint.

46. Deny the allegations contained in paragraph 46 of the complaint.

47. Deny the allegations contained in paragraph 47 of the complaint.

48. Deny the allegations contained in paragraph 48 of the complaint.

49. Deny the allegations contained in paragraph 49 of the complaint.

50. Deny the allegations contained in paragraph 50 of the complaint.

51. Deny the allegations contained in paragraph 51 of the complaint.

52. Deny the allegations contained in paragraph 52 of the complaint.

53. Neither deny nor admit the allegations contained in paragraph 53 of the complaint as it is a legal conclusion, but if a response is required, then deny the allegations contained in paragraph 53 of the complaint.

## AS TO COUNT III

54. Answering defendants incorporate by reference their answers to paragraph 1 through 53 of the complaint as if the same were set forth at length herein.

55. Deny the allegations contained in paragraph 55 of the complaint.

## AS TO COUNT IV

56. Answering defendants incorporate by reference their answers to paragraph 1 through 55 of the complaint as if the same were set forth at length herein.

57. Deny the allegations contained in paragraph 57 of the complaint.

58. Deny the allegations contained in paragraph 58 of the complaint.

59. Neither deny nor admit the allegations contained in paragraph 59 of the complaint as it is a legal conclusion, but if a response is required, then deny the allegations contained in paragraph 59 of the complaint.

## AS TO COUNT V

60. Answering defendants incorporate by reference their answers to paragraph 1 through 59 of the complaint as if the same were set forth at length herein.

61. Deny the allegations contained in paragraph 61 of the complaint.

62. Deny the allegations contained in paragraph 62 of the complaint.

63. Deny the allegations contained in paragraph 63 of the complaint.

64. Deny the allegations contained in paragraph 64 of the complaint.

65. Deny the allegations contained in paragraph 65 of the complaint.

66. Deny the allegations contained in paragraph 66 of the complaint.

67. Deny the allegations contained in paragraph 67 of the complaint.

68. Deny the allegations contained in paragraph 68 of the complaint.

## AS TO COUNT VI

69. Answering defendants incorporate by reference their answers to paragraph 1 through 68 of the complaint as if the same were set forth at length herein.

70. Deny the allegations contained in paragraph 70 of the complaint.

71. Deny the allegations contained in paragraph 71 of the complaint.

72. Deny the allegations contained in paragraph 72 of the complaint.

73. Deny the allegations contained in paragraph 73 of the complaint.

74. Deny the allegations contained in paragraph 74 of the complaint.

## AS TO COUNT VII

75. Answering defendants incorporate by reference their answers to paragraph 1 through 75 of the complaint as if the same were set forth at length herein.

76. Neither deny nor admit the allegations contained in paragraph 76 of the complaint as this is not a factual allegation but a conclusion of law; but if a response is required, deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76.

77. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77.

78. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78.

79. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79.

80. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80.

81. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81.

82. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82.

### AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted and should therefore be dismissed.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Any discrepancies that may exist on the application were immaterial.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

Any allegations made by plaintiffs as to material misrepresentations on the application, to which defendants deny, were made by plaintiff's own agents.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

Plaintiff and/or its agents was/were aware, or could have made itself/themselves aware, of all of the facts surrounding the policies and the insured and is estopped from rescinding the policies.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

Plaintiff, through its actions, has ratified the insurance policies.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

Plaintiff failed to promptly refund premium and therefore is barred from rescinding coverage.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not the real party in interest.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred under the doctrine of "unclean hands."

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred under the doctrine of laches.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred under the doctrine of estoppel and/or waiver.

**WHEREFORE,** defendants pray for an order dismissing the complaint, and granting judgment to defendants that the policies of insurance are in full force and effect plus costs, actual

attorneys' fees, and such other and further relief as this Court may deem just and proper

Dated: New York, New York
       March 19, 2010

                                    SCHINDEL, FARMAN, LIPSIUS
                                    GARDNER & RABINOVICH LLP
                                    Attorneys for Defendants

                          By:       _____
                                    Ira S. Lipsius (IL5704)
                                    14 Penn Plaza, Suite 500
                                    New York, New York  10122
                                    212-563-1710

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                                     ) ss.:

COUNTY OF NEW YORK      )

I, Tandrea Lane, being duly sworn, states as follows:  I am over 18 years of age, not a party to the within action, and employed at 14 Penn Plaza, Suite 500, New York, New York 10122.  On **March 19, 2010**, I served the within **ANSWER** upon the persons or parties designated below by filing a true and complete copy of same in a postage pre-paid envelope, and depositing same in a post office or official depository of the United States Postal Service within New York State, at the last known address of the addressees as set forth herein:

**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
3 Gannett Drive
White Plains, NY  10604
Attorneys for Plaintiff

_____
Tandrea Lane

Sworn to before me this
19th day of March, 2010

_____
Notary Public

DAVID BENHAIM
Notary Public, State of New York
No. 02BE6181352
Qualified in Queens County
Commission Expires Jan. 28, 2012

# Exhibit 4

**Scarpino, Julianne T.**

| | |
|---|---|
| **From:** | Arbitrio, Michelle |
| **Sent:** | Monday, March 15, 2010 6:31 PM |
| **To:** | 'Cheryl Lipsius' |
| **Cc:** | Knopf, Fred N.; Hayes, Emily; Rubin, Abigail |
| **Subject:** | Salamon - Letter Agreement re: Premium Payments 7478.456 |
| **Attachments:** | WPDOCS01-#2709371-v1-letter_to_Cheryl_Lipsius_re__stop_paying_premiums.DOC |

Hi Cheryl,

Attached please find our draft letter agreement regarding the cessation of premium payments in the Salamon matter. If you agree to the terms contained in the attached letter agreement, please sign and return to me. If you do not agree to the terms contained in the attached letter, please contact me to discuss your proposed revisions. Please note that, to the extent that you delay or refuse to enter into an agreement regarding the cessation of premium payments, it is American General's position that you have waived any right to assert defenses, counterclaims, etc., regarding the acceptance of premiums.

Many thanks,

Michelle Arbitrio
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407
p 914-872-7788
f 914-323-7001
michelle.arbitrio@wilsonelser.com

7/20/2010

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

3 Gannett Drive, White Plains, NY 10604-3407
Tel: 914.323.7000   Fax: 914.323.7001

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean*
*Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains*
*Affiliates:  Berlin • Cologne • Frankfurt • Munich • Paris*

—

**www.wilsonelser.com**

March 15, 2010

**By Overnight Mail**

Cheryl Lipsius
Schindel, Farman, Lipsius
Gardner & Rabinovich LLP
14 Penn Plaza – Suite 500
New York, NY 10122

RE:   American General Life Ins. Co. v. Hana Salamon et al.
Civil Action No.: 09-CV 5428(ARR)(SMG)
<u>Our File No.: 07478.00456</u>

Dear Ms. Lipsius:

This letter shall confirm the agreement and understanding between and among American General Life Insurance Company ("American General") and Hana Salamon, Joel Katz, Individually and as Trustee of the Hana Family Trust, Aaron Knopfler, Individually and as Trustee of the Hana Family Trust, and the Hana Family Trust (the "Defendants") relating to notices regarding payment of premiums under Life Policy number U10022254L (the "Policy") issued by American General and insuring the life of Hana Salamon in the amount of $8,500,000. That is, from the date that the above-referenced litigation was commenced by American General, and for as long as the above-referenced litigation is pending, neither the Defendants or any other person or entity shall make any premium payments under the Policy. American General shall place the Policy in suspense while the litigation is pending. "Suspense" means that the Policy will not lapse for non-payment of premiums and all rights and incidents of ownership shall be frozen. Failure to render premium payments to American General for the Policy while the litigation is pending will not cause the lapse, cancellation, or termination of the Policy.[1]

American General and the Defendants further agree that any notice or communication issued by American General concerning the Policy, premiums due, lapse

---

[1] Of course, American General contends that the Policy is void ab initio based upon the allegations of the Complaint filed in the litigation. By entering into this agreement and understanding, American General does not waive any claims set forth in the Complaint or any other rights, claims and defenses that it may otherwise assert in connection with the litigation that are not inconsistent with this agreement and understanding.

2709371.1

or reinstatement while the litigation is pending shall be ignored by American General and the Defendants, shall be expressly excluded from evidence in the litigation, and shall not be used or relied upon by the Defendants in connection with the litigation for any purpose, including but not limited to refuting, disputing, or otherwise opposing American General's contention that the Policy is void *ab initio*. In the even that the Defendants or any other person shall render payment of premium to American General while the litigation is pending, American General may, at its sole option, return the premium payment to the payor or deposit the premium payment without prejudice to and without wavier of or estoppel against any of its rights, claims, and/or defenses asserted or to be asserted in connection with the litigation. Any premium payments accepted by American General shall be deemed to have been placed into suspense and subject to the ultimate outcome of the litigation.

In the event that litigation results in a determination in favor of the Defendants and requiring that the Policy remains in force and effect, whether the favorable determination results from judgment, amicable resolution, or otherwise, the Defendants will submit to American General all premium payments that will have come due while the litigation was pending, and the Defendants shall also remit interest on the past due premiums at the post judgment interest rate as provided in the Federal Rules of Civil Procedure. The Defendants shall remit such payment within 30 calendar days of the entry of judgment or execution of other instrument declaring the Policy valid and in force.

American General and the Defendants each acknowledge and agree that nothing herein shall be construed as an admission of any liability by any Party, and all other rights, claims and defenses asserted or to be asserted by each party as to the validity of the Policy or lack thereof are expressly preserved.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


Michelle M. Arbitrio

The undersigned hereby acknowledges and agrees to the foregoing agreement and understanding:

_____
Cheryl Lipsius, Esq.
Schindel, Farman, Lipsius
Gardner & Rabinovich LLP
Attorneys for the Defendants


2709371.1

**Scarpino, Julianne T.**

| | |
|---|---|
| **From:** | Rubin, Abigail |
| **Sent:** | Monday, April 05, 2010 2:25 PM |
| **To:** | 'clipsius@sfl-legal.com' |
| **Cc:** | Arbitrio, Michelle; Knopf, Fred N.; Hayes, Emily |
| **Subject:** | Salamon - Letter Agreement re: Premium Payments 7478.456 |
| **Attachments:** | WPDOCS01-#2709371-v1-letter_to_Cheryl_Lipsius_re__stop_paying_premiums.DOC |

Dear Ms. Lipsius:

I write to follow up on Michelle Arbitrio's March 15, 2010 email transmitting a draft letter agreement regarding the cessation of premium payments in the Salamon matter (see below). We have not heard back from you regarding any proposed revisions nor have we received the signed letter. To reiterate, to the extent that you delay or refuse to enter into such an agreement, it is American General's position that you have waived any right to assert defenses, counterclaims, etc., regarding the acceptance of premiums.

The letter is attached hereto for your convenience. Please review the letter and either sign and return it to me, or contact me to discuss your proposed changes.

Thanks,

Abigail Rubin
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407
p 914-872-7871
f 914-323-7001
abigail.rubin@wilsonelser.com

---

**From:** Arbitrio, Michelle
**Sent:** Monday, March 15, 2010 6:31 PM
**To:** 'Cheryl Lipsius'
**Cc:** Knopf, Fred N.; Hayes, Emily; Rubin, Abigail
**Subject:** Salamon - Letter Agreement re: Premium Payments 7478.456

Hi Cheryl,

Attached please find our draft letter agreement regarding the cessation of premium payments in the Salamon matter. If you agree to the terms contained in the attached letter agreement, please sign and return to me. If you do not agree to the terms contained in the attached letter, please contact me to discuss your proposed revisions. Please note that, to the extent that you delay or refuse to enter into an agreement regarding the cessation of premium payments, it is American General's position that you have waived any right to assert defenses, counterclaims, etc., regarding the acceptance of premiums.

Many thanks,

Michelle Arbitrio

7/20/2010

Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407
p 914-872-7788
f 914-323-7001
michelle.arbitrio@wilsonelser.com

## Scarpino, Julianne T.

| | |
|---|---|
| **From:** | Rubin, Abigail |
| **Sent:** | Friday, April 16, 2010 10:11 AM |
| **To:** | "clipsius@sfl-legal.com'; 'Tandrea Lane' |
| **Cc:** | Knopf, Fred N.; Arbitrio, Michelle |
| **Subject:** | Salamon - Letter Agreement re: Premium Payments and Stipulation to Extend Discovery Response Time, 7478.456 |
| **Attachments:** | WPDOCS01-#2744992-v1-Stipulation_Extending_Time_to_Respond_to_Discovery_ (not_fully_executed).PDF; WPDOCS01-#2709371-v1-letter_to_Cheryl_Lipsius_re__stop_paying_premiums.DOC |

Dear Ms. Lipsius:

Attached please find the signed stipulation extending the time for both parties to respond to discovery requests. Please execute and send me a fully executed version for my records. Additionally, I am forwarding the chain of requests regarding the draft letter agreement regarding the cessation of premium payments (see below, and see letter attached hereto for your convenience). We have still not heard back from you regarding any proposed revisions nor have we received the signed letter. Please review the letter and either sign and return it to me, or contact me to discuss your proposed changes so that we may avoid any unnecessary consequences.

Thanks,

Abigail Rubin
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407
p 914-872-7871
f 914-323-7001
abigail.rubin@wilsonelser.com

---

**From:** Rubin, Abigail
**Sent:** Monday, April 05, 2010 2:25 PM
**To:** 'clipsius@sfl-legal.com'
**Cc:** Arbitrio, Michelle; Knopf, Fred N.; Hayes, Emily
**Subject:** Salamon - Letter Agreement re: Premium Payments 7478.456

Dear Ms. Lipsius:

I write to follow up on Michelle Arbitrio's March 15, 2010 email transmitting a draft letter agreement regarding the cessation of premium payments in the Salamon matter (see below). We have not heard back from you regarding any proposed revisions nor have we received the signed letter. To reiterate, to the extent that you delay or refuse to enter into such an agreement, it is American General's position that you have waived any right to assert defenses, counterclaims, etc., regarding the acceptance of premiums.

The letter is attached hereto for your convenience. Please review the letter and either sign and return it to me, or contact me to discuss your proposed changes.

7/20/2010

Thanks,

Abigail Rubin
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407
p 914-872-7871
f 914-323-7001
abigail.rubin@wilsonelser.com

---

**From:** Arbitrio, Michelle
**Sent:** Monday, March 15, 2010 6:31 PM
**To:** 'Cheryl Lipsius'
**Cc:** Knopf, Fred N.; Hayes, Emily; Rubin, Abigail
**Subject:** Salamon - Letter Agreement re: Premium Payments 7478.456

Hi Cheryl,

Attached please find our draft letter agreement regarding the cessation of premium payments in the Salamon matter. If you agree to the terms contained in the attached letter agreement, please sign and return to me. If you do not agree to the terms contained in the attached letter, please contact me to discuss your proposed revisions. Please note that, to the extent that you delay or refuse to enter into an agreement regarding the cessation of premium payments, it is American General's position that you have waived any right to assert defenses, counterclaims, etc., regarding the acceptance of premiums.

Many thanks,

Michelle Arbitrio
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407
p 914-872-7788
f 914-323-7001
michelle.arbitrio@wilsonelser.com

# Exhibit 5

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:09-cv-05428-KAM -SMG

American General Life Insurance Company v. Salamon et al
Assigned to: Judge Kiyo A. Matsumoto
Referred to: Chief Magistrate Steven M. Gold
Cause: 28:1332 Diversity-Insurance Contract

Date Filed: 12/11/2009
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**American General Life Insurance Company**

represented by **Fred N. Knopf**
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
West Harrison, NY 10604
914-323-7000
Fax: 914-323-7001
Email: fred.knopf@wilsonelser.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abigail Deborah Rubin**
Wilson Elser Moskowitz Edelman & Dicker, LLP
3 Gannett Drive
West Harrison, NY 10604
914-323-7000
Fax: 914-323-7001
Email: abigail.rubin@wilsonelser.com
*ATTORNEY TO BE NOTICED*

**Emily Anna Hayes**
Wilson Elwer Moskowitz Edelman & Dicker LLP
Three Gannett Drive
White Plains, NY 10604
914-323-7000
Fax: 914-323-7001
Email: hayese@wemed.com
*ATTORNEY TO BE NOTICED*

**Michelle M. Arbitrio**
Wilson Elser Moskowitz Edelman & Dicker
3 Gannett Drive
White Plains, NY 10604
914-323-7000
Fax: 914-323-7001
Email:

michelle.arbitrio@wilsonelser.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hana Salamon**                         represented by   **Ira S. Lipsius**
                                                          Schindel,Farman & Lipsius, LLP
                                                          14 Pennsylvania Plaza
                                                          Suite 500
                                                          New York, NY 10122
                                                          (212) 563-1710
                                                          Email: iral@sfl-legal.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Joel Katz**                            represented by   **Ira S. Lipsius**
*Individually and as Trustee for the*                     (See above for address)
*Hana Family Trust*                                       *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Hana Family Trust**                    represented by   **Ira S. Lipsius**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Aaron Knopfler**                       represented by   **Ira S. Lipsius**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Interested Party**

**Rahana Garelick**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/11/2009 | 1 | COMPLAINT against Hana Family Trust, Joel Katz, Hana Salamon Disclosure Statement on Civil Cover Sheet completed -Yes,, filed by American General Life Insurance Company. (Attachments: # 1 Civil Cover Sheet) (Davis, Kimberly) (Entered: 12/16/2009) |
| 12/11/2009 |   | FILING FEE: $ 350.00, receipt number 4653008887 (Davis, Kimberly) (Entered: 12/16/2009) |
| 12/11/2009 |   | Summons Issued as to Hana Family Trust, Joel Katz, Hana Salamon. (Davis, Kimberly) (Entered: 12/16/2009) |

| 12/11/2009 | 2 | DISCLOSURE of Interested Parties by American General Life Insurance Company. (Davis, Kimberly) (Entered: 12/16/2009) |
|---|---|---|
| 12/16/2009 | 3 | NOTICE of Appearance by Fred N. Knopf on behalf of American General Life Insurance Company (aty to be noticed) (Knopf, Fred) (Entered: 12/16/2009) |
| 12/16/2009 | 4 | NOTICE of Appearance by Fred N. Knopf on behalf of American General Life Insurance Company (notification declined or already on case) (Knopf, Fred) (Entered: 12/16/2009) |
| 12/16/2009 | 5 | AFFIDAVIT of Service for Notice of Appearance *of Fred N. Knopf* served on All Defendants on December 16, 2009, filed by American General Life Insurance Company. (Knopf, Fred) (Entered: 12/16/2009) |
| 12/16/2009 | 6 | AFFIDAVIT of Service for Affidavit of Service re Notice of Appearance of Michelle M. Arbitrio served on All Defendants on December 16, 2009, filed by American General Life Insurance Company. (Arbitrio, Michelle) (Entered: 12/16/2009) |
| 12/16/2009 | 7 | NOTICE of Appearance by Fred N. Knopf on behalf of American General Life Insurance Company (notification declined or already on case) (Knopf, Fred) (Entered: 12/16/2009) |
| 12/16/2009 | 8 | NOTICE of Appearance by Michelle M. Arbitrio on behalf of American General Life Insurance Company (notification declined or already on case) (Arbitrio, Michelle) (Entered: 12/16/2009) |
| 01/11/2010 | 9 | SUMMONS Returned Executed by American General Life Insurance Company. American General Life Insurance Company served on 12/21/2009, answer due 1/11/2010. (Arbitrio, Michelle) (Entered: 01/11/2010) |
| 01/11/2010 | 10 | SUMMONS Returned Executed by American General Life Insurance Company. Joel Katz served on 12/21/2009, answer due 1/11/2010. (Arbitrio, Michelle) (Entered: 01/11/2010) |
| 01/15/2010 | 11 | SCHEDULING ORDER: An in-person initial conference will be held at 10:00 a.m. on March 4, 2010 in Courtroom 13-D South. Counsel are directed to refer to and comply with the attached Order. So Ordered by Chief Magistrate Judge Steven M. Gold on 1/15/2010. (Attachments: # 1 Chambers Individual Rules) (Vasquez, Lea) (Entered: 01/15/2010) |
| 03/01/2010 | 12 | SUMMONS Returned Executed by American General Life Insurance Company. Hana Family Trust served on 12/21/2009, answer due 1/11/2010. (Arbitrio, Michelle) (Entered: 03/01/2010) |
| 03/01/2010 | 13 | SUMMONS Returned Executed by American General Life Insurance Company. Rahana Garelick served on 2/12/2010, answer due 3/5/2010. (Arbitrio, Michelle) (Entered: 03/01/2010) |
| 03/01/2010 | 14 | Letter MOTION to Adjourn Conference *(rULE 16)* by American General Life Insurance Company. (Arbitrio, Michelle) (Entered: 03/01/2010) |
| 03/02/2010 | | ORDER granting 14 Motion to Adjourn March 4th Conference. Plaintiff's counsel is directed to file a motion for default in accordance with the motion |

| | | |
|---|---|---|
| | | practices of Judge Ross, no later than March 26, 2010. So Ordered by Chief Magistrate Judge Steven M. Gold on 3/2/2010. (Vasquez, Lea) (Entered: 03/02/2010) |
| 03/03/2010 | 15 | NOTICE of Appearance by Ira S. Lipsius on behalf of Hana Family Trust, Joel Katz, Hana Salamon, Aaron Knopfler (aty to be noticed) (Lipsius, Ira) (Entered: 03/03/2010) |
| 03/19/2010 | 16 | ANSWER to 1 Complaint by Hana Family Trust, Joel Katz, Aaron Knopfler, Hana Salamon. (Lipsius, Ira) (Entered: 03/19/2010) |
| 03/19/2010 | 17 | AFFIDAVIT of Service for Answer served on Wilson, Elser, Moskowitz, Edelman & Dicker LLP on March 19, 2010, filed by Hana Family Trust, Joel Katz, Aaron Knopfler, Hana Salamon. (Lipsius, Ira) (Entered: 03/19/2010) |
| 03/22/2010 | 18 | NOTICE of Appearance by Abigail Deborah Rubin on behalf of American General Life Insurance Company (aty to be noticed) (Rubin, Abigail) (Entered: 03/22/2010) |
| 03/22/2010 | 19 | NOTICE of Appearance by Emily Anna Hayes on behalf of American General Life Insurance Company (aty to be noticed) (Hayes, Emily) (Entered: 03/22/2010) |
| 03/25/2010 | | SCHEDULING ORDER: A Telephone Conference will be held at 12:00 p.m. on 3/29/2010.Counsel for plaintiff is directed to confirm this conference date and time with defendants' counsel as well as arrange the call with all parties. So Ordered by Chief Magistrate Judge Steven M. Gold on 3/25/2010. (Vasquez, Lea) (Entered: 03/25/2010) |
| 04/07/2010 | | **Minute Entry for Telephone Conference held on 3/29/2010 before Chief Magistrate Judge Steven M. Gold:** Rubin for plaintiff, Lipsius for defendant. The initial conference, originally scheduled for March 4, will be held instead at 10:00 a.m. on April 14, 2010. Counsel are referred to the attachment to the original scheduling order, Docket Entry 11-1, and are asked to review it during their Rule 26(f) conference. (Vasquez, Lea) (Entered: 04/07/2010) |
| 04/13/2010 | | RE-SCHEDULING ORDER: The initial conference previously scheduled for 10:00 a.m. on April 14, 2010, will instead be held at 10:30 a.m. on the same date. Ordered by Chief Magistrate Steven M. Gold on 4/13/2010. (Miller, Ilana) (Entered: 04/13/2010) |
| 04/13/2010 | 20 | Letter MOTION to Adjourn Conference *Scheduled for April 14, 2010* by Hana Family Trust, Joel Katz, Aaron Knopfler, Hana Salamon. (Lipsius, Ira) (Entered: 04/13/2010) |
| 04/13/2010 | | ORDER granting 20 Motion to Adjourn Conference. The initial conference previously scheduled for April 14, 2010, will instead be held at 10:00 a.m. on April 29, 2010. So Ordered by Chief Magistrate Judge Steven M. Gold on 4/13/2010. (Miller, Ilana) (Entered: 04/13/2010) |
| 04/29/2010 | 21 | Letter *requesting a pre-motion conference* by Hana Family Trust, Joel Katz, Aaron Knopfler, Hana Salamon (Lipsius, Ira) (Entered: 04/29/2010) |
| 04/30/2010 | | AMENDED NOTICE Defendants have submitted a letter requesting a pre- |

|            |    |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                         |
|------------|----|-----------|
|            |    | motion conference regarding an anticipated motion for summary judgment. Plaintiff's counsel is reminded that, under Judge Ross' Individual Motion Practices, plaintiff is required to file a responsive letter addressing the legal and factual bases of the anticipated motion within seven business days from service of defendants' letter. (Badlani, Chirag) (Entered: 04/30/2010) |
| 04/30/2010 |    | Minute Entry for Initial Conference Hearing held on 4/29/2010 before Chief Magistrate Judge Steven M. Gold: Rubin for plaintiff, Lipsius for defendant. (1) Without objection by plaintiff, discovery is stayed pending resolution of defendant's anticipated dispositive motion, with respect to which defendant filed a premotion conference application earlier today. (2) There being some confusion over the parties' respective settlement positions, the court will hold a settlement conference at 4 pm on May 10, at which persons with full settlement authority must be present or, at a minimum, available by telephone throughout the conference. Plaintiff may advise the Court prior to May 3 if it has a firm position on whether it is willing to resolve the case on the grounds discussed today, in which case the Court may cancel the conference. (Vasquez, Lea) (Entered: 04/30/2010) |
| 05/03/2010 | 22 | Letter *informing court of status* by American General Life Insurance Company (Knopf, Fred) (Entered: 05/03/2010) |
| 05/03/2010 | 23 | ORDER OF RECUSAL. Judge Allyne R. Ross recused. Case reassigned to Judge Kiyo A. Matsumoto for all further proceedings Type of Recusal Case Type. Ordered by Judge Allyne R. Ross on 5/3/2010. (Davis, Kimberly) (Entered: 05/04/2010) |
| 05/04/2010 |    | ORDER re 22 Letter filed by American General Life Insurance Company: In light of the letter submitted by plaintiff dated May 3, 2010, Docket entry 22, the settlement conference set for May 10 is adjourned without date. The previously entered stay of discovery pending defendants' anticipated motion to dismiss will remain in effect absent further application to the court. The parties are encouraged to continue considering the possibility of settlement and to write a letter seeking a settlement conference if they believe it would be productive to hold one. So Ordered by Chief Magistrate Judge Steven M. Gold on 5/4/2010. (Vasquez, Lea) (Entered: 05/04/2010) |
| 05/06/2010 | 24 | Letter *Hon. Matsumoto re premotion conference* by American General Life Insurance Company (Knopf, Fred) (Entered: 05/06/2010) |
| 05/07/2010 |    | SCHEDULING ORDER: Telephonic pre-motion conference set for 5/14/10 at 3:00 p.m. Defendants' counsel shall initiate the call and contact chambers at 718-613-2180 when all parties are on the line. Ordered by Judge Kiyo A. Matsumoto on 5/7/2010. (Ginns, Laura) (Entered: 05/07/2010) |
| 05/07/2010 | 25 | First MOTION to Adjourn Conference *of May 14, 2010* by American General Life Insurance Company. (Rubin, Abigail) (Entered: 05/07/2010) |
| 05/12/2010 |    | SCHEDULING ORDER granting 25 Motion to Adjourn Conference. Telephonic pre-motion conference reset for 5/27/10 at 3:00 p.m. Defendants' counsel shall initiate the call and contact chambers at 718-613-2180 when all parties are on the line. Ordered by Judge Kiyo A. Matsumoto on 5/12/2010. (Ginns, Laura) (Entered: 05/12/2010) |

| 05/27/2010 | | Minute Entry for proceedings held before Judge Kiyo A. Matsumoto: Telephonic Pre Motion Conference held on 5/27/2010. Plaintiff appeared by Michelle Arbitrio, Esq. Defendants appeared by Ira Lipsius, Esq. The parties discussed defendants' proposed motion for summary judgment and the court ordered as follows: (1) By 6/3/10, plaintiff shall file a supplemental reply to defendants' letter, Doc. 21 . (2) By 6/8/10, defendants shall file their response, if any. (3) By 6/4/10, defendants shall provide plaintiff with copies of any deeds and any other documents such as tax returns which are within their possession, custody, or control, and which bear on the representations contained in the insurance application which is the subject of the complaint. Status conference set for 6/9/10 at 9:30 a.m. Plaintiff's counsel shall initiate the call and contact chambers at 718-613-2180 when all parties are on the line. (Ginns, Laura) (Entered: 05/27/2010) |
| 06/03/2010 | 26 | Letter MOTION for pre motion conference *in response to defendants' request for leave to file summary judgment motion per Hon. Matsumoto directive of 5/27 premotion conference* by American General Life Insurance Company. (Arbitrio, Michelle) (Entered: 06/03/2010) |
| 06/08/2010 | 27 | Letter *requesting permission to appear in person on June 9, 2010 for conference* by American General Life Insurance Company (Arbitrio, Michelle) (Entered: 06/08/2010) |
| 06/08/2010 | | ORDER: Plaintiff's request to appear in person at the telephonic conference on 6/9/10 at 9:30 a.m. has been GRANTED. Ordered by Judge Kiyo A. Matsumoto on 6/8/2010. (Williams-Jackson, Sandra) (Entered: 06/08/2010) |
| 06/08/2010 | 28 | Letter *in Response* by Hana Family Trust (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Lipsius, Ira) (Entered: 06/08/2010) |
| 06/09/2010 | | Minute Entry for proceedings held before Judge Kiyo A. Matsumoto: Pre Motion Conference held on 6/9/2010. Plaintiff appeared by telephone by Michelle Arbitrio, Esq. Defendants appeared in person by Ira S. Lipsius, Esq. The court set the following briefing schedule for defendants' proposed motion for summary judgment: defendants shall serve their proposed motion by 6/30; plaintiff shall serve its opposition by 7/21/10; defendants shall serve their reply, if any, by 8/4/10, and file the fully briefed motion via ECF by that date, and not before. Two courtesy copies of all motion papers shall be provided to chambers. (Ginns, Laura) (Entered: 06/09/2010) |
| 07/06/2010 | 29 | MOTION for Leave to File by Hana Family Trust, Joel Katz, Aaron Knopfler, Hana Salamon. (Brucella, Michelle) (Entered: 07/06/2010) |
| 07/06/2010 | | ORDER granting 29 Motion for Leave to File. Defendants shall serve their proposed motion by 7/7/10; and file the fully briefed motion via ECF by 8/5/10. Two courtesy copies of all motion papers shall be provided to chambers. Ordered by Judge Kiyo A. Matsumoto on 7/6/2010. (Williams-Jackson, Sandra) (Entered: 07/06/2010) |
| 07/08/2010 | | ORDER denying as moot 26 Motion for Pre Motion Conference. The motion for a pre-motion conference is denied as moot given that the court has already held such conference with the parties. See Minute Entry dated 6/9/10. Ordered by Judge Kiyo A. Matsumoto on 7/8/2010. (Ginns, Laura) (Entered: |

Case 1:09-cv-05428-KAM-SMG   Document 34-3   Filed 08/05/10   Page 42 of 56 PageID #: 485

07/08/2010)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/19/2010 15:09:23 | | | |
| PACER Login: | we1565 | Client Code: | 07478.00456 8870 |
| Description: | Docket Report | Search Criteria: | 1:09-cv-05428-KAM -SMG |
| Billable Pages: | 5 | Cost: | 0.40 |

# Exhibit 6

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

ATTORNEYS AT LAW

14 PENN PLAZA

SUITE 500

NEW YORK, N.Y. 10122

(212) 563-1710

FACSIMILE (212) 695-6602

WEBSITE: www.sfl-legal.com

NEW JERSEY OFFICE
4 CORNWALL DRIVE, SUITE 101
EAST BRUNSWICK, N.J. 08816
(732) 390-0166
FACSIMILE (732) 432-7706

Writer's Extension: 226
Email: clipsius@sfl-legal.com

June 4, 2010

Michelle Arbitrio, Esq.
Wilson Elser Moskowitz
Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604

Re: **American General v. Salamon**
**Docket No. 09-cv-5428**
**Your File No. 07478.00456**
**Our File No. 4374.0001**

Dear Michelle:

In accordance with the Court's Minute Order of May 27, 2010, I am responding as to the financial information the Court has requested be provided to AIG.

AIG has represented to the Court, in ¶ 20 of the complaint, that Mrs. Salamon represented to an investigator that she is the owner of two 16-unit apartment complexes in Brooklyn, New York. The reference to apartment complexes was not contained in any application, and the application makes no reference to any specific asset.

The law, in New York, NY Ins. Law §§ 3204(a)(2), states that:

(a)(2) No application for the issuance of any such policy or contract shall be admissible in evidence unless a true copy was attached to such policy or contract when issued.

Therefore, any alleged representations as to apartment buildings are irrelevant as AIG cannot void a policy of insurance based upon the absence or presence of those assets. With that said, see attached as Exhibit "A," a copy of the document evidencing Ms. Salamon's real estate assets in Romania. Although the documents are in Romanian, the attached document (relevant portions highlighted) valued Ms. Hana Moscovic's share of the Romanian property at 18,000,000 lei. The papers further indicate that Hana Moscovic was living at 4910 17th Avenue, Apartment 4G, Brooklyn, NY. Hana Moscovic and Hana Salamon is one and the same person. Please note that at the time of the policy application, Hana Moscovic Salamon's share of the property was valued at 18,000,000 lei, the equivalent of U.S. $7,330,570. A copy of the OANDA conversion of lei to dollars on December15, 2007 is attached hereto as Exhibit "B."

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Michelle Arbitrio, Esq.
June 4, 2010
Page 2

      We have conferred with Ms. Salamon who indicated that she and her husband had an ownership interest in **two Cooperative Apartments**, Apartments 4G and 2J, in a cooperative apartment building in Brooklyn and lived in one of the apartments. Further, as to tax returns, Ms. Salamon has indicated that she has not filed tax returns.

                                          Very truly yours,

                                          SCHINDEL, FARMAN, LIPSIUS,
                                          GARDNER & RABINOVICH LLP

                                          Cheryl D. Lipsius

CDL:bl
Enclosures

4

Cum, contractul de vânzare cumpărare este un act juridic civil, ce constată acordul de voință intervenit între două sau mai multe persoane în scopul de a crea, modifica sau stinge raporturi juridice, este lesne de înțeles că nu astfel de acte notariale a avut în vedere legiuitorul, ci acele acte de jurisdicție emise în soluționarea unui litigiu între părți cu interese contrarii și în cadrul unei proceduri specifice, așa cum s-a arătat mai sus; cu alte cuvinte, contractul de vânzare cumpărare nu este o hotărâre în sensul art. 165 din Legea nr. 105/1992.

Față de acestea, Tribunalul apreciază că cererea reclamantului este neîntemeiată și o va respinge pe cale de consecință, ca atare.

### PENTRU ACESTE MOTIVE
### ÎN NUMELE LEGII
### HOTĂRĂȘTE:

Respinge excepția inadmisibilității cererii.

Respinge, ca neîntemeiată, cererea formulată de reclamantul **BENZION DEUTSCH**, cu domiciliul în S.U.A., New York, 90151 Street Brooklyn și cu domiciliul ales în București, str. Turda nr. 100, bl. 30 B, sc.A, etj.6, ap. 22, sectorul 1, în contradictoriu cu pârâții **MAJEROVIC HAYA**, cu domiciliul în U.S.A., 1464, Granada Place, Far Rockaway, New York și **MOSCOVICI HANA**, cu domiciliul în U.S.A., 4910, 17 Ave, ap 4G, Brooklyn, *ambele cu domiciliul ales* la Cabinet Avocat „IRINESCU THEODORA", situat în Iași, str. Sf. Lazăr nr. 6, bloc Peneș Curcanul, sc.A, etj.4, ap. 10, județul Iași, și **TWESKY BROCHE**, cu domiciliul în U.S.A., N.Y. 1657 Ocean Parkway, Ave P. 11223-2133, și *cu domiciliul ales* la avocat Brudariu Adrian în București, str. I.S.Bach nr. 1 A, sc.B, etj.2, ap. 29, sectorul 2.

Obligă reclamantul la 18.000.000 lei cheltuieli d judecată către pârâta Moscovic Hana; 18.000.000 lei cheltuieli de judecată către pârâtul Majerovic Haya și 3.000.000 lei către pârâta Twersky Broche.

Cu drept de apel în termen de 15 zile de la comunicare.

Pronunțată în ședință publică azi 18.10.2004.

PREȘEDINTE,                                        GREFIER,
NICOLETA MĂRĂȘOIU                          NOEMI STANCIU

Red. N.M.
Dact.GZ –19.11.2004
7 ex.

Case 1:09-cv-05428-KAM-SMG   Document 34-5   Filed 08/05/10   Page 47 of 56 PageID #: 490

Forex Trading     Exchange Rates     Money Transfers     Currency Hedging     About Us

Currency Converter     Currency T

Mobile

Home       Currency Tools       Currency Converter

# Currency Converter

## Currency I Have:

| Romanian New Lei | RON |

**AMOUNT:**          I have this much to exchange

| 18000000 |

## Currency I Want:

| US Dollar |

**AMOUNT:**          I want t

| 7,330,570 |

**SHOW DETAILS**        **DATE:** (MM/DD/YYYY)   | 12/15/2007 |        **RATE:** | Interbank rate |

## Currency Converter

**FXConverter** is a multilingual currency converter for over 164 currencies and 3 metals. It uses daily OANDA Rates®, the touchstone foreign exchange rates used by corporations, tax authorities, auditing firms, and financial institutions. These filtered rates are based on information supplied by leading market data contributors.

**Note:** The Interbank rate shown by this tool is seldom available to the general public. To avoid disappointment, choose a percentage add-on from the rate list to approximate the actual rate charged by your financial institution.

**DID YOU KNOW YOU CAN?**

- Type in currency symbols, names or countries to select your currency.
- See currencies which are now obsolete. They are marked by an asterisk (*).
- View the historic rate for any currency back to January, 1990.

<u>Looking for the old FXConverter?</u>



# Exhibit 7

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

## NEW YORK

## LEGAL MEMORANDUM

**To:**        Michelle Arbitrio

**From:**     Armand Kalfayan

**Date:**      May 21, 2010

**Subject:**   American General v. Salamon

**File No.:**   07478.00456

---

The following is an English translation of the Romanian document you forwarded me involved in the above referenced matter:

    As the contract of selling buying is a civil judicial act, which consists of an accord between two or more people in order to create, modify or end legal relationships, it is easily understood that no such notarial acts were the view of the legislature, but those documents issued by acts of lawyers, in the solution of a litigation between parties with contradicting interests, frame of a specific procedure, in other words the contract for selling buying is not a decision in the meaning of art.165 of Law nr. 105/1992.

    Towards this, the tribunal appreciates that the applicant's request is unfounded and will reject consequential as such.

    For these reasons in the name of the law decide:

    Reject the exception of the inadmissibility of the request.

    Reject as unfounded, the petition formulated by the plaintiff : Benzion Deutsch with residence in USA (address) and with chosen residence in Bucharest (address), conflicting with the defendants Majerovic Haya with residence in USA (address) and Moscovici Hana, with residence in USA ( address ), both with chosen domicile at law office Irinescu Theodora, located in Iasi (address) and Twesky Broche with residence in USA (address) and  with chosen at lawyer Brudariu Adrian in Bucharest (address).

4021308.1

Require of the plaintiff of 18 million lei, trial expenses towards defendant Mascovic Hana: 18 million lei trial expenses towards defendant Majerovic Haya and 3 million lei towards defendant Twersky Broche.

With right to appeal within 15 days of the communication.

Declared in public session today, 18/10/2004.

Registrar,

Noemi Stanciu

# Exhibit 8

Română 🇷🇴   English 🇬🇧

### RON

| | GENERAL PRESENTATION |
|---|---|
| General presentation | |
| Legislation | |
| Specimens | |
| Media events | |
| Frequently asked questions | |
| Usefull links | |

**NEW LEU (RON)** ... Nothing to lose, nothing to win. Everything will be simplified.

- As of **1 July 2005**, the leu (ROL), Romania's legal tender, was redenominated so that **10,00** that date, can be exchanged for **1 new leu (RON).**
- The existing banknotes and coins, i.e. the old lei, shall be legal tender until **end-December**
- By 31 December 2006, the existing banknotes and coins, i.e. the old lei, are to be replaced banknotes and coins.
- Starting 1 January 2007, the exchange shall be made only at the NBR branches carrying ou of the credit institutions authorised by the NBR Governor's order to perform the exchange.
- The exchange will be made for unlimited period starting with 1 january 2007.



**NEW LEU (RON)** ... Nothing to lose, nothing to win. Everything will be simplified

© Copyright 2010 NBR and Disclaimer

Forex Trading    Exchange Rates    Money Transfers    Currency Hedging    About Us

My Account    Register    Help    Search

Currency Converter    Currency Tools    Data Services    Web Tools    Mobile

Home    Currency Tools    Currency Converter

# Currency Converter

## Currency I Have:

**Romanian New Lei**                    **RON**

AMOUNT:            *I have this much to exchange*

1,800

## Currency I Want:

**US Dollar**                    **USD**

AMOUNT:            *I want to buy something at this price*

733.057

SHOW DETAILS        DATE: (MM/DD/YYYY)    12/15/2007        RATE:    Interbank rate

English

TRY ALSO...

Customized
Currency Converter
Widget

iPhone Converter

Blackberry Converter

Android Converter

Money Transfers

Exchange Rate
Feeds

## Currency Converter

**FXConverter** is a multilingual currency converter for over 164 currencies and 3 metals. It uses daily OANDA Rates®, the touchstone foreign exchange rates used by corporations, tax authorities, auditing firms, and financial institutions. These filtered rates are based on information supplied by leading market data contributors.

**Note:** The Interbank rate shown by this tool is seldom available to the general public. To avoid disappointment, choose a percentage add-on from the rate list to approximate the actual rate charged by your financial institution.

**DID YOU KNOW YOU CAN?**

- Type in currency symbols, names or countries to select your currency.
- See currencies which are now obsolete. They are marked by an asterisk (*).
- View the historic rate for any currency back to January, 1990.

Looking for the old FXConverter?

HELP

PRINT

TRAVELER'S
CHEAT SHEET

Ads by Google

# Take us
# with you



US Dollar Will
Skyrocket
While Foreign
Currencies Fall!
Find Out How You
Could Profit
Handsomely
www.MoneyandMarkets.



**Foreign Exchange Tools**

Historical Exchange Rates

Average Exchange Rates

Travel Exchange Rates

Currency Cross Rates

**Quick Currency Links**

Currency Table

Currency Trends

Currency Graph

iPhone Forex Trading

**More on OANDA**

Forex Demo Account

Blackberry Currency Converter

iPhone Currency Converter

Exchange Rate Data Feed

Terms of Use    Privacy    Advertise    Site Map    Contact Us    Feedback

© 1996 - 2010 OANDA Corporation. All rights reserved. All Registered Trade Marks used on this Website, whether marked as Trade Marks or not marked, are declared to belong to their respective owner(s). OANDA Corporation owns Trade Marks of all its "FX" products.

Forex Trading    Exchange Rates    Money Transfers    Currency Hedging    About Us

My Account    Register    Help    Search

Currency Converter    Currency Tools    Data Services    Web Tools    Mobile

Home    Currency Tools    Currency Converter

# Currency Converter

Warning: ROL Romanian Lei is obsolete and no longer legal tender.

| Currency I Have: | | | Currency I Want: | | | English |
|---|---|---|---|---|---|---|
| **Romanian Lei*** | | **ROL** | **US Dollar** | | **USD** | |

**TRY ALSO...**

| AMOUNT: | I have this much to exchange | | AMOUNT: | I want to buy something at this price |
|---|---|---|---|---|
| 18,000,000 | | | 733.057 | |

Customized Currency Converter Widget

iPhone Converter

Blackberry Converter

Android Converter

Money Transfers

Exchange Rate Feeds

| SHOW DETAILS | DATE: (MM/DD/YYYY) | 12/15/2007 | RATE: | Interbank rate |
|---|---|---|---|---|

## Currency Converter

**FXConverter** is a multilingual currency converter for over 164 currencies and 3 metals. It uses daily OANDA Rates®, the touchstone foreign exchange rates used by corporations, tax authorities, auditing firms, and financial institutions. These filtered rates are based on information supplied by leading market data contributors.

**Note:** The Interbank rate shown by this tool is seldom available to the general public. To avoid disappointment, choose a percentage add-on from the rate list to approximate the actual rate charged by your financial institution.

**DID YOU KNOW YOU CAN?**

- Type in currency symbols, names or countries to select your currency.
- See currencies which are now obsolete. They are marked by an asterisk (*).
- View the historic rate for any currency back to January, 1990.

Looking for the old FXConverter?

HELP

PRINT

TRAVELER'S CHEAT SHEET

Ads by Google

## Take us with you

US Dollar Will Skyrocket While Foreign Currencies Fall! Find Out How You Could Profit Handsomely. www.MoneyandMarkets.

| Foreign Exchange Tools | Quick Currency Links | More on OANDA |
|---|---|---|
| Historical Exchange Rates | Currency Table | Forex Demo Account |
| Average Exchange Rates | Currency Trends | Blackberry Currency Converter |
| Travel Exchange Rates | Currency Graph | iPhone Currency Converter |
| Currency Cross Rates | iPhone Forex Trading | Exchange Rate Data Feed |

Terms of Use    Privacy    Advertise    Site Map    Contact Us    Feedback

© 1996 - 2010 OANDA Corporation. All rights reserved. All Registered Trade Marks used on this Website, whether marked as Trade Marks or not marked, are declared to belong to their respective owner(s). OANDA Corporation owns Trade Marks of all its "FX" products.