**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AMERICAN GENERAL LIFE INSURANCE COMPANY,** | **Docket No.: 09-cv-5428** |
| **Plaintiff,** | |
| **vs.** | |
| **HANA SALAMON, JOEL KATZ, Individually and as Trustee for the Hana Family Trust, AARON KNOPFLER, Individually and as Trustee for the Hana Family Trust, and the HANA FAMILY TRUST,** | |
| **Defendants.** | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SCHINDEL, FARMAN, LIPSIUS,**
**GARDNER & RABINOVICH LLP**
**Attorneys for Defendants**
**14 Penn Plaza, Suite 500**
**New York, NY 10122**
**212-563-1710**

**Of Counsel**

   **Ira S. Lipsius**
   **David BenHaim**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ……………………………………………………. ii

PRELIMINARY STATEMENT ……………………………………………… 1

ARGUMENT

     I.     AIG'S EXCUSE FOR THE CONTINUED
           REMAND, ACCEPTANCE AND RETENTION OF
           PREMIUMS IS NOT VALID UNDER NEW YORK
           LAW………………………………………………………………….3

     II.    AIG'S CLAIM THAT ITS SYSTEM
           IS NOT DESIGNED TO REJECT OR RETURN PREMIUMS
           IS CATEGORICALLY FALSE …………………………………..……...7

     III.   AIG SHOULD HAVE MOVED TO
           RESCIND AND STOP DEDUCTING FROM THE
           TRUST ACCOUNT IN EARLY 2008 ………………………………….8

     IV.   COUNSEL FOR DEFENDANTS EMPHATICALLY DENY
           ANY WRONGDOING …………………………………………………10

CONCLUSION…………………………………………………………………….15

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Bible v. John Hancock Mut. Life Ins. Co. of Boston, Mass.*
256 N.Y. 458, 176 N.E. 838 (1931)................................................................... 11

*Continental Ins. Co. v. Helmsley Enterprises, Inc.*
211 A.D.2d 589, 622 N.Y.S.2d 20 (1st Dept. 1995)................................. 3, 4

*D'Onofrio v. Safeco Ins. Co. of America*
70 A.D.2d 945, 417 N.Y.S.2d 778 (1979) ................................................. 5

*Garbin v. Mutual Life Ins. Co. of New York*
77 Misc.2d 689, 356 N.Y.S.2d 741(N.Y.Sup. 1974)................................ 5

*Grubel v. Union Mutual Life Ins. Co.*
54 A.D.2d 686, 387 N.Y.S.2d 442 (2d Dept. 1976) ................................ 9

*GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*
593 F.Supp.2d 471 (E.D.N.Y 2009) ........................................................ 3

*Lincoln Life and Annuity Co. of New York v. Janis*, Supreme Court,
Westchester County, Index No.: 17362-08...............................................7

*McNaught v. Equitable Life Assur. Society of United States*
136 A.D. 774, 121 N.Y.S. 447 (2nd Dept. 1910)...................................... 4

*Metropolitan Life Insurance Company v. Blum*
7 A.D.2d 488, 184 N.Y.S.2d 455 (1st Dept. 1959), *affd.* 9 N.Y.2d 954
217 N.Y.S.2d 225, 176 N.E.2d 202 (1961).............................................. 6

*Prudential Ins. Co. v. BMC Indus., Inc.*
630 F.Supp. 1298 ....................................................................................... 9

*S.E.C. v. Credit Bancorp, Ltd.*
147 F.Supp.2d 238, 255 (S.D.N.Y. 2001)................................................ 9

*Scalia v. Equitable Life Assur. Society of United States*
251 A.D.2d 315, 673 N.Y.S.2d 730 (2nd Dept. 1998)........................... 3, 4

*Security Mutual Life Insurance Co. of New York v. Rodriguez*
65 A.D.3d 1, 880 N.Y.S.2d 619 (2009) (1st Dept. 2009) ....................... 6

*Sheindlin v. Sheindlin*
88 A.D.2d 930, 450 N.Y.S.2d 881 (2d Dept. 1982) ...................................................... 9

*State Farm Mut. Auto. Ins. Co. v. Bockhorst*
453 F.2d 533, 536-537 (10th Cir. 1972) ...................................................................... 6

*Stauss v. Title Guarantee & Trust Co.*
284 N.Y. 41, 29 N.E.2d 462 (1940) ............................................................................ 10

*Zeldman v. Mut. Life Ins. Co.*
269 A.D. 53, 53 N.Y.S.2d 792 (1st Dept. 1945) ........................................................ 4

**Statutes**

New York Insurance Law § 3204(a)(2) .............................................................. 10, 11

## PRELIMINARY STATEMENT

Defendants respectfully submit this memorandum of law in reply to the opposition by American General Life Insurance Company ("AIG") to defendants' motion for summary judgment.

AIG's responsive Rule 56.1 Statement is the beginning and end of this motion.  The crucial facts in this motion have been admitted.  Within weeks of the issuance of the policy, AIG had reason to believe the policy had been obtained based upon a false application.  It has not shown or even asserted that it learned anything new since February 2008 when it suspected the application was false.  AIG, in its memorandum of law, states, "American General determined that it had grounds to rescind the Policy.  As such, American General sent a letter to Ms. Salamon, dated February 5, 2009, seeking a voluntary rescission."  By its own admission, it had grounds to rescind on February 5, 2009, if not a year before.  Yet, each month, from February 2009 through February 2010, AIG deducted approximately $20,000 from the Trust account and in November 2009 collected over $200,000 in fresh funds from the insured.  These uncontested facts are determinative as to defendants' summary judgment claim as to (1) waiver; (2) estoppel; and (3) ratification.  AIG can be absolutely correct on every one of its other allegations[1], and must still lose this case under the theories of waiver and estoppel because it collected, charged, billed and retained premiums.  Further, under the theory of ratification, it failed to commence an action in a timely manner.

Defendants moved for summary judgment upon well grounded principles of insurance law.  If an insurer collects premiums with knowledge of grounds for rescission, it has waived and is

---

[1] It is distressing and perhaps censurable that in responding to the motion, AIG engages in conduct unbefitting of litigants before this Court. Instead of responding to the issues at hand, AIG goes off on a shameful, illogical and irrelevant diatribe against Defendants' counsel. It is respectfully submitted that AIG's attempt to vilify Defendants' counsel by way of inaccurate representations regarding matters not before this Court is simply an attempt to distract this Court from the issue before it and to generate an animosity towards defendants. These accusations are denied and will be addresses separately.  The accusations are a crude attempt to avoid the issues in this case.  Further, the assets of the insured are irrelevant to the issues presently before this court.

estopped from rescinding. Here, AIG is estopped because it deducted hundreds of thousands of dollars of premiums from the Trust's account, collected and deposited hundreds of thousands of dollars of premium while it asserted that it had a basis to rescind the policy, and, in fact had notified the insured that the policy was rescinded.  AIG has not denied that it drained the Trust account every month of approximately $20,000 and also accepted premiums of over $200,000.

Further, if an insurer does not timely commence a rescission action once it has reason to believe that it can do so, it is deemed to have ratified the contract. Here, AIG ratified the contract because it obtained knowledge of the right to rescind over a year prior to seeking rescission.

At its core, AIG opposes the motion on the ground that its "mainframe" system is not designed to comply with New York's requirement that an insurer stop accepting premiums once it has notice of grounds for rescission. That argument has been rejected by New York courts and is also factually untrue.

As one court described it, the law is "crystal clear" that an insurer cannot collect any premiums after it has knowledge of grounds of rescission. Under applicable law, AIG was obligated to rescind the policy in February 2008 and return to the Trust the cash value of the policy. Instead, AIG deducted over $300,000 from the Hana Trust account in "insurance costs" and even collected additional premium of $212,500. None of this money was returned, tendered or deposited with this court.

New York courts have recognized that an unintentional collection of premiums would not estop an insurer form voiding the policy if the insurer promptly returns the premiums; here AIG admits that it intentionally accepted premiums and intentionally retained those premiums because its system is designed to do so. Moreover, AIG claims that after the February 2009 premium payment AIG figured out a way to override its system and stop collecting premiums. Why this

could not have occurred in accordance with New York law once AIG became aware of the grounds

for rescission remains unexplained. Also unexplained is why AIG' after having "over-ridden" the

system is February 2009, failed to return the wrongfully collected premiums.  Finally, AIG fails to

explain why it drained the cash value of the account between February 2009 and November 2009,

demanded additional premiums and in February 2010, notified defendants that the policy had

lapsed for failure to pay premiums.

AIG's claim that its action for punitive damages survives this motion is without foundation

as it did not seek punitive damages in the Complaint. As a result of AIG's actions, Defendants are

entitled to final judgment in their favor.

## <u>ARGUMENT</u>

I.    **AIG'S EXCUSE FOR THE CONTINUED
      REMAND, ACCEPTANCE AND RETENTION OF PREMIUM
      <u>IS NOT VALID UNDER NEW YORK LAW</u>**

The law "is crystal clear on this point-when an insurer seeks to rescind a contract *ab initio*

based on misrepresentations by the insured, it must promptly disaffirm the contract upon learning

of the misrepresentations – **<u>and certainly it may not continue to derive benefit under it</u>**."

*GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, 593 F.Supp.2d 471 (E.D.N.Y

2009) (denying insurer right to rescind because it accepted premium payments) (emphasis

supplied). It is well established that an insurer is estopped from rescinding a policy if it continues

to accept premium. *Cont'l Ins. Co. v. Helmsley Enters., Inc*., 211 A.D.2d 589, 589, 622 N.Y.S.2d

20, 20 (1st Dept. 1995); *Zeldman v. Mut. Life Ins. Co*., 269 A.D. 53, 53 N.Y.S.2d 792 (1st Dept.

1945); *Scalia v. Equitable Life Assurance Soc'y of U.S.*, 251 A.D.2d 315, 315, 673 N.Y.S.2d 730,

731 (2nd Dept. 1998).

This is true even if the insurer simultaneously with the acceptance of premium also takes other actions furthering the attempted rescission. *Continental Ins. Co. v. Helmsley Enterprises, Inc.* 211 A.D.2d 589, 622 N.Y.S.2d 20 (1st Dept. 1995); *McNaught v. Equitable Life Assur. Society of United States*, 136 A.D. 774, 121 N.Y.S. 447 (2nd Dept. 1910); *Scalia v. Equitable Life Assur. Society of United States*, 251 A.D.2d 315, 673 N.Y.S.2d 730 (2nd Dept. 1998); *Metropolitan Life Insurance Company v. Blum*, 7 A.D.2d 488, 184 N.Y.S.2d 455 (1st Dept. 1959), *affd*. 9 N.Y.2d 954, 217 N.Y.S.2d 225, 176 N.E.2d 202 (1961).

In *Helmsley Enterprises* the insurer, like AIG here, rescinded the policy but continued to accept premiums. The Court held, "plaintiff waived its right to seek rescission of the contract of insurance when it knowingly accepted premium payments for several months following discovery of the alleged misrepresentations upon which it claimed to have relied when it issued the policies. Plaintiff's claimed attempt to both accept premiums and reserve its right to rescind is unenforceable for lack of mutuality and timeliness."

The court in *Helmsley Enterprises* based its decision upon *McNaught v. Equitable Life Assur. Society of United States*, 136 A.D. 774, 121 N.Y.S. 447 (2nd Dept. 1910), where the insurer continued to accept premium after determining grounds for rescission. . In *McNaught*, the court held:

> It is well-settled law that when one discovers that he has been induced to enter into a contract by fraud he may take either of two grounds: He may stand upon the contract and sue for such damages as he suffered from the fraud, or he may elect to rescind the contract. . . . **In neither case can he rescind himself nor ask for a rescission in equity, if, after knowledge of the fraud, he affirms the contract by accepting a benefit under it**. (emphasis supplied).

In *Scalia* the insurer took action to rescind but continued to accept premiums. The court held, "Equitable's claimed attempt to both accept premium and reserve its right to rescind is unenforceable for lack of mutuality and timeliness." (internal quotes omitted).

AIG's claim that the acceptance and retention of premiums was unintentional has been rejected by New York courts. In *Garbin v. Mutual Life Ins. Co. of New York*, 77 Misc.2d 689, 356 N.Y.S.2d 741(N.Y.Sup. 1974) an insurer issued two policies, a life insurance policy and a health policy. The insurer rescinded the health policy but "continued to demand, accept and retain four separate quarterly premium payments" for the life policy. The insurer claimed that the reason it continued to demand, accept and retain the premium was "inadvertence." The court held it was not a valid excuse that the insurer was "large and complex and subject to interdepartmental breakdowns in communication." As a matter of law "the collection and retention of four payments over a full year cannot be overlooked as mere inadvertent and temporary acceptance of a premium" which can be excused. Here, as well, even if inadvertent, AIG cannot hide behind its actions.

AIG contends that complying with New York law is inconvenient and "time consuming." This argument was rejected in *D'Onofrio v. Safeco Ins. Co. of America*, 70 A.D.2d 945, 417 N.Y.S.2d 778 (2nd Dept. 1979) where the court held:

> Although defendant argues that it was not its intention to reinstate the policy, its computerized system of handling checks, which caused the delay in rejecting plaintiffs' $75 check, was totally under its control and the insurer should not be able to rely on its own inefficiency to plaintiffs' detriment. Rather, the insurer's conduct is sufficient, in our view, to invoke the doctrine of estoppel against it.

New York law is clear: an insurer cannot void a policy after accepting and keeping premiums. AIG cannot escape its obligations under New York law by laying the blame on its

computer system. As the court held in *State Farm Mut. Auto. Ins. Co. v. Bockhorst*, 453 F.2d

533, 536-537 (10th Cir. 1972):

> A computer operates only in accordance with the information and directions
> supplied by its human programmers. If the computer does not think like a
> man, it is man's fault. . . . The fact that the actual processing of the policy
> was carried out by an unimaginative mechanical device can have no effect
> on the company's responsibilities for those errors and oversights.

In *Bockhorst*, the court found that by accepting premiums with knowledge of the actual

facts the insurer is stopped from denying the policy.

In *Security Mutual Life Insurance Co. of New York v. Rodriguez*, 65 A.D.3d 1, 880

N.Y.S.2d 619 (2009) (1st Dept. 2009), the insurer claimed that it "inadvertently" collected the

premium payments because "the payments were debited monthly from Mobarak's … account"

automatically. *Rodriguez,* 232 N.Y.S.2d at 684. The court, however, identified the argument as:

> Contrary to the case law. . .Plaintiff's acceptance of premiums from Mobarak after
> learning of the alleged fraud allowing for cancellation of the policies constituted a waiver
> of (or more properly an estoppel against) its right to cancel or rescind the policies." *Id*. at
> 625.

In *Metropolitan Life Insurance Company v. Blum*, 7 A.D.2d 488, 184 N.Y.S.2d 455 (1st

Dept. 1959), *affd*. 9 N.Y.2d 954, 217 N.Y.S.2d 225, 176 N.E.2d 202 (1961) cited by AIG is

easily distinguished as the court found that since the insurer returned the premium promptly after

accepting it, the "temporary retention of the premium on the $5,000 policy does not afford a basis

for estoppel." *Blum*, 184 N.Y.S.2d  at 458. Here, AIG did not return premiums. Similarly in

*Travelers Ins. Co. v. Pomerantz*, 246 N.Y. 63 (1927), also cited by AIG, the court found that

since the insurer returned the premium payment within a month or two its rescission was not

barred.  In *Prudential Ins. Co. v. Brown*, 30 Misc.2d 147, 215 N.Y.S.2d 65 (Sup.Ct. Wstch.Cty.

1961), the insurer negligently collected two payments which it immediately returned in January

1959. The insurer returned the two payments but simultaneously accepted a third. Here, not only

did the AIG accept premium, never refunding the same, but charged the account monthly and has asserted it intentionally refused to refund the premium. Further the 1961 *Brown* decision, which is not an appellate decision, may not reflect current law.

In a more recent decision from the same court, *Lincoln Life and Annuity Co. of New York v. Janis*, Supreme Court, Westchester County, Index No.: 17362-08 (Order, Jan. 10, 2010), attached as Exhibit A, the court held:

> In the instant case, the record is clear that the plaintiff continued to bill the insured after the commencement of suit, accepted policy premiums thereafter, and now admittedly seeks the right to retain all premiums paid. See Belesi v. Connecticut Mutual Life Insurance Company, 272 A.D.2d 353 (2d Dept. 2000). Thus, the Trustee has made a *prima facie* case that plaintiff has waived its right to rescind the policy through its demand for, acceptance of and retention of policy premiums after it learned of defendant's alleged material misrepresentations, which was the basis for which plaintiff seeks to rescind the policy. As such, plaintiff's attempts to simultaneously accept premiums and assert its right to rescission are unenforceable. See Scalia v. Equitable Life Assurance Society of the United States, *supra*.
>
> Accordingly, defendant's motion for summary judgment is granted and the court declares that plaintiff is estopped from contending that life insurance policy number LF5549300 may be rescinded.

Therefore, American General's acceptance of premiums from the Hana Family Trust, after learning of the grounds for rescission, bars it from rescinding the Policy, even though it claims the acceptance was inadvertent.

## III.   AIG'S CLAIM THAT ITS SYSTEM IS NOT DESIGNED TO REJECT OR RETURN PREMIUMS IS CATERGORICALLY FALSE

While AIG's argument that its "mainframe" system is responsible for AIG's action fails as a matter of law, as detailed above, it also is not true. Firstly, AIG admits that "as soon as defendants answered in this matter, AIG immediately sent an agreement to defendants to cease paying premiums." Somehow, AIG was able to figure out post litigation what it could not do in February 2008 or February 2009. Moreover, despite the fact that it admits that in March 2010, AIG was in the position to stop collecting premiums, AIG does not explain why it did not return the money it demanded and collected after February 2008 or even the premiums collected after the February 2009 letter rescinding the policy and demanded additional premiums as late as November 2009. Quite simply, AIG's claim that its "mainframe" system is to blame contradicts every single action and inaction by AIG. Despite AIG's claim that it can override its system, it has not done so in this case as it continues to keep the premiums collected since February 2008. [2]

Although irrelevant, this court should take note that AIG has offered to override its system in the instant matter and its sister company has done so in other actions. See *U.S. Life v. Grunhut*, Supreme Court, New York County, Index No: 600550/07, *U.S. Life v. Blumenfeld*, Supreme Court, New York County, Index No. 601212/08. Thus, AIG's claim that it simply cannot comply with New York law is not true, but even if true, is irrelevant.

III   **AIG SHOULD HAVE MOVED TO RESCIND AND**
       **STOP DEDUCTING FROM THE TRUST ACCOUNT  IN EARLY 2008**

AIG does not deny that in February 2008, only a few weeks after it issued the policy to defendants, they suspected that the insured's financial condition was not accurately reflected in the application and began an investigation. (Plaintiff's Response to Rule 56.1, ¶ 4).  AIG claims that it

---

2 AIG asserts defendants refused to enter into an agreement in March 2010 to stop collecting further premiums.  The proposed agreement required defendants to waive their affirmative defenses. There is no relevance to this document offered during litigation as an attempt by AIG to trick defendants into waiving valuable legal rights.

was not required to rescind the Policy at that time and was entitled to continue deducting and

demanding premiums because its investigation was "ongoing" and indeed continues to be ongoing.

Glaringly absent from AIG's response is an affidavit from its investigator or anyone else

that reveals even a single piece of information learned by AIG between February 2008 and the date

it commenced the lawsuit. In fact, as evidenced by its latter of February 4, 2009, AIG knew in

December 2009 what it knew in February 2009; the only difference is that by December 2009,

AIG had helped itself to over $500,000 in premiums.

As a matter of law, the question is not whether in February 2008 and certainly by February

2009 AIG possessed *all* the information necessary to commence an action for rescission. Rather, as

the court articulated in *S.E.C. v. Credit Bancorp, Ltd.*, 147 F.Supp.2d 238, 255 (S.D.N.Y. 2001),

AIG constructively ratified the contract by not going further once "it had knowledge at least

sufficient to lead a prudent person to inquire about the matter." The key factors are "whether [the]

party silently acquiesced in the contract or rather promptly interposed his objections upon

discovering the basis for the claim of rescission." *Prudential Ins. Co. v. BMC Indus., Inc*., 630

F.Supp. 1298, 1302 citing *Sheindlin v. Sheindlin*, 88 A.D.2d 930, 450 N.Y.S.2d 881 (2d Dept.

1982). See also, *Grubel v. Union Mutual Life Ins. Co*., 54 A.D.2d 686, 387 N.Y.S.2d 442 (2d Dept.

1976)" *S.E.C*., 147 F.Supp.2d at 256. [3]

AIG refutes the fact that it silently acquiesced by arguing:

The first flaw in the defendant's theory of ratification is that they have no basis for
claiming that AIG silently acquiesced in the contract because they have not obtained any
discovery regarding AIG's knowledge or conduct during that time period.

---

[3] Plaintiff assertion that  the February 2008 investigation was ongoing and, therefore, plaintiff was entitled to collect
premiums is hallow because even *after* the February 2009 rescission letter, AIG continued to demand, collect and
*withdraw premium. Indeed, AIG argues that it was under the belief and continues to operate under the belief that it
can continue to collect, charge and retain premium until there is a judicial decision declaring the policy void.  It
appears that even if it was certain* of its grounds for rescission in January 2008 it would have continued to treat its
policy as valid because AIG's "mainframe system" is too "complicated and intricate" to comply with New York law
(Plaintiff's memo of law, page 7).

AIG's argument here appears to be that summary judgment is not ripe because the *moving* party needs additional, unspecified discovery from AIG. AIG must come forward with evidence if it possesses such evidence. AIG was obligated in early 2008 to repudiate the contract to defendants by returning the premiums, no longer demand additional premiums and commencing an action for rescission. By refusing to do so, it has silently acquiesced and cannot act upon the alleged fraud. see, *Stauss v. Title Guarantee & Trust Co*., 284 N.Y. 41, 44-45 29 N.E.2d 462 (1940).

By continuing to treat the defendants and the defendants' money as if the policy was in full force and effect, AIG has ratified the policy and is further estopped from rescinding the policy.

## IV    COUNSEL FOR DEFENDANTS EMPHATICALLY DENY ANY WRONGDOING

Although not relevant to any issue before this Court on the motion for summary judgment, American General shamefully turns the motion into an attack on defendants' counsel. American General's accusations against counsel are false and misleading.  These allegations are not made in plaintiff's Rule 56.1 Statement or in any affidavit, nor do they bear any weight in the issues here.  For example, American General claims, "the Schindel Farman firm have conceded that Ms. Salamon does not own the Brooklyn properties as reported during the application process, but maintains that it is acceptable to provide insurers with false information during the application process so long as the falsification is not in the application itself" (Plaintiff's Memo of Law, page 2). American General is actually referring to defendant's reliance upon New York Insurance Law § 3204(a) which provides:

> (1) Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state, shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference

to any writing, unless a copy thereof is endorsed upon or attached to the
policy or contract when issued.

(2) No application for the issuance of any such policy or contract shall be
admissible in evidence unless a true copy was attached to such policy or
contract when issued

Thus, under the statute, if the application did not state that the property owned by

Salamon was in Brooklyn, then American General cannot rely upon such a representation made

elsewhere in support of its rescission action. This is a long standing principle of insurance law.

As the Court of Appeals legendarily opined in *Bible v. John Hancock Mut. Life Ins. Co. of*

*Boston, Mass.*, 256 N.Y. 458, 176 N.E. 838 (1931), "[t]he defendant procured applications from

the insured, but did not attach them to the policies. What was in them we do not know, and we

must act as if they had never been."

American General's attempt to portray Defendants' counsel reliance upon New York

Insurance Law § 3204 as wrongful is disgraceful.

American General also makes allegations concerning the "Schindel Farman firm's"

knowledge of American General's "mainframe" system.  Quite the opposite; counsel has no idea

how American General's systems operate and whether counsel has such knowledge is irrelevant.

American General's claims as to avoidance in discovery are without merit.  On April 30,

2010 this Court ordered discovery suspended, with American General's consent, until this issue

is decided.  The stay was ordered to remain in effect on May 4, 2010.  When the stay was later

lifted, defendants continued the discovery process.

American General also states that "the Schindel Farman firm provided false evidence –

after the commencement of this litigation and in response to a court order – which further adds to

the suspicions of overall fraud." The "false evidence" amounts to a genuine, official Romanian

document produced in discovery and a printout from the internet. Defendants have maintained

11

that the Romanian document states that they own a hospital in Romania valued at 18 million lei. The document is dated October 2004. Counsel for defendants did not have the document translated into English and have no knowledge independent of what was told to them by defendants as to the content of the document. In June 2010, counsel for defendants forwarded an exact copy of the original document without any alterations and a printout from an internet currency conversion calculator. Not realizing that there was a change in currency, when counsel used the calculator, counsel accidentally typed in the date of the policy application into the internet calculator instead of the date when the Romanian document was created. Defendants' counsel did not take any measure to prevent American General from having the document translated; indeed, it believed that American General would do just that. Moreover, the conversion rate printout from an internet calculator, is not evidence, yet alone admissible evidence. Defendants' counsel expected American General to present the document to a translator and obtain its own conversion from lei to dollar. When American General did so, it found that the evidence does not support defendants' claim. While the evidence may be weak and refutable, to call the evidence "false" is a fallacious and highly inappropriate charge.

Although Defendants continue to maintain that they own property in Romania and elsewhere, whether or not American General is legally entitled to void the policy for fraud is not at issue in this motion. For the purposes of this motion, it is assumed that the representations made in the application entitled American General to rescind. Defendants have argued that notwithstanding the right to rescind on the grounds of misrepresentations, American General cannot do so under the insurance law cannons of ratification, waiver and estoppel.

Although not relevant to the instant motion, the real fraud in the STOLI world was perpetrated by AIG and similarly situated life insurance companies, who are the main engines

12

behind STOLI. AIG sought to write high value policies to elderly individuals because of the extremely high premiums and high lapse rate associated with such policies. As a result, American General underwriters, and indeed many insurers' underwriters, ignored the analysis of their own actuaries and underwriting guidelines and wrote high value elderly policies even if such policies were actuarially deficient. This was especially true with regard to the underwriting guideline's stance on financials as an insured that did not meet the financial guidelines would live just as long and have even less ability to keep paying high premiums. Below is a chart of the elderly policies issued in the last two decades:



(Source: Wall Street Journal)

Beginning in 2001, insurers and investment institutions looked upon the elderly market as a great opportunity for growth. Insurers were well aware that the number of millionaires capable of paying hundreds of thousands of dollars in annual premium did not increase 100 fold in ten years. Insurers, while maintaining certain underwriting guidelines totally ignored the financial position of insureds. Therefore, AIG, the leading insurer of seniors as well as the leading investor (through Coventry First, LLC) of such policies, ignored its own guidelines. Applications were

13

processed which omitted financial statements and financial information was not verified. Indeed, AIG encouraged its brokers to fudge the numbers on an insured's financial application in order to get the policies and their high premiums on the books.

Investment institutions saw this phenomenon as a significant opportunity for expansion. AIG, American General's parent company, funded a company called Coventry First, LLC, the largest investor in the STOLI market, which purchased these actuarially deficient elderly policies in volume and continued to pay premiums until the death benefits became due. And so the world of Stranger Owned Life Insurance was born. Since these policies were written with the lapse rate in mind, and the policies were no longer lapsing, the investors saw tremendous profits while the life insurers began to suffer financially.

American General, counting on many of these high premium policies to lapse, was now forced to keep-up its end of the contract. As a result, at the end of 2006 and beginning of 2007 American General began to aggressively litigate the elderly policies and hoped that post-issuance judicial underwriting would offset the failures of its pre-issuance insurance underwriting. Even though American General was not concerned about the net worth of the insured when the policy was written, as that information does not at all increase or decrease the likelihood of death, American General began using the financial information contained in applications as a pretext to rescind policies.

These issues are, of course, not presently before this court on this motion and neither are the allegations that the policy applications contained false financial information. The 18 material facts cited by defendants in support of this motion have all been effectively admitted by American General. Faced with uncontested facts that would defeat this action, American General

rehashes the allegations in the complaint and flings unwarranted charges against defendants' counsel solely in an attempt to distract the Court from the issue at hand.

American General's claim that the action survives on the punitive damages claim is also meritless. Nowhere in the complaint does American General seek punitive damages.

Moreover, by ratifying the contract, American General has chosen to keep the policy in force notwithstanding the insured's financial condition and has waived and is estopped from asserting any right to claim that the misrepresentations concerning an insured's financial status were material to the issuance of the life insurance policy. Thus, defendants are entitled to final judgment.

## CONCLUSION

For all of the foregoing reasons, the defendants respectfully request an Order entering summary judgment in their favor.

Dated: New York, New York
      August 5, 2010

SCHINDEL, FARMAN, LIPSIUS,
GARDNER & RABINOVICH LLP
Attorneys for Defendants

By: _____
    Ira S. Lipsius
    David BenHaim
14 Penn Plaza, Suite 500
New York, NY 10122
212-563-1710

15