UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

AMERICAN GENERAL LIFE INSURANCE
COMPANY,

                Plaintiff,              **MEMORANDUM AND ORDER**

   -against-                    09-CV-5428 (KAM)(SMG)

HANA SALAMON, JOEL KATZ, Individually
and as Trustee for the HANA FAMILY
TRUST, AARON KNOPFLER, Individually and
as Trustee for the HANA FAMILY TRUST,
and the HANA FAMILY TRUST,

                Defendants.

----------------------------------------X

**MATSUMOTO, United States District Judge:**

        Plaintiff American General Life Insurance Company

("American General" or "AIG") commenced this diversity action

against Hana Salamon, Joel Katz, Individually and as Trustee for

the Hana Family Trust, Aaron Knopfler, Individually and as

Trustee for the Hana Family Trust, and the Hana Family Trust

("defendants") seeking a declaratory judgment of its rights and

obligations with respect to Flexible Premium Adjustable Life

Insurance Policy No. U10022254L (the "Policy"), rescission of

the policy, and attorneys fees and costs.  Presently before the

court is defendants' motion for summary judgment.  For the

reasons set forth below, defendants' motion is granted.

## BACKGROUND

The following facts are drawn from the parties' statements of material facts pursuant to Local Civil Rule 56.1.

Plaintiff issued a life insurance policy to the Hana Family Trust (the "Trust") on the life of Hana Salamon effective December 28, 2007.  (ECF No. 32-2, Defendants' Statement of Material Facts Pursuant to Local Rule 56.1(a) ("Defs. 56.1 Stmt."), at ¶ 1.)  Plaintiff issued the Policy on the basis of an application completed and executed by defendant Hana Salamon on December 20, 2007 (the "Application").  (ECF No. 35, Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Stmt."), at ¶ 19.) On the Application, defendant Hana Salamon reported personal earned income of $150,000-$300,000, household income of $470,000, and net worth of $14 million.  (*Id.* at ¶ 20.)  The Application stated that it relied upon "representations regarding the insured's financial status to determine eligibility for coverage and that any misrepresentation contained in the application and relied on by American General may be used to reduce or deny a claim or void the policy if it is within the contestability period and materially affects the acceptance of risk."  (*Id.* at ¶ 23.)

During a preliminary investigation in February 2008, plaintiff discovered material false representations in the

Application.  (*Id.* at ¶¶ 3-4.)  It is undisputed that in
February and May 2008, Stephen Mostecek, principal investigator
with AIG World Investigative Resources Northeast Region, sent
Ms. Salamon two letters requesting additional information
"concerning certain *suspect* aspects" of the Policy.  Additional
letters were sent by plaintiff or its counsel in June 2008 and
February 2009.  (Defs. 56.1 Stmt. at ¶¶ 5-8; ECF No. 32-3, Exs.
A, B, and C, Letters dated Feb. 6, 2008, Feb. 26, 2008 and May
5, 2008; Pl. 56.1 Stmt. at ¶ 5-6.)  Plaintiff's statement that
the investigation "is still ongoing," is not disputed.  (Pl.
56.1 Stmt. at ¶ 4.)

On February 5, 2009, plaintiff, through counsel, sent
a letter to Hana Salamon purportedly rescinding the Policy,
stating that it would return any applicable premium, and
requesting the execution of a voluntary rescission agreement to
avoid litigation.  (Defs. 56.1 Stmt. at ¶ 8; ECF No. 32-3, Ex.
D, Letter dated Feb. 5, 2009; Pl. 56.1 Stmt. at ¶ 8.)  Plaintiff
did not receive a response from Hana Salamon to any of the
aforementioned letters sent in February, May and June 2008 and
February 2009.  (Defs. 56.1 Stmt. at ¶ 8; Pl. 56.1 Stmt. at
¶ 9.)  Four days later, the trustee of the Trust issued check
9993 in the amount of $212,500 to American General as a premium
payment for the Policy.  (Defs. 56.1 Stmt. at ¶ 10.)  It is
undisputed that on February 9, 2009, American General negotiated

premium payment check 9993.  (Defs. 56.1 Stmt. at ¶ 11; ECF No. 33, Plaintiff American General Life Insurance Company's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 18.)  By letter dated February 16, 2010, plaintiff's annual statement of life insurance for the period 2007-2008 indicated that plaintiff received $366,650 from the Hana Family Trust.  (Defs. 56.1 Stmt. at ¶ 12; Pl. 56.1 Stmt. at ¶ 12.)

The parties disagree over the status of the Policy in the following months.  Defendants state that "[b]y November 30, 2009, there were insufficient balances to keep the policy in force and the policy had gone into grace.  (Defs. 56.1 Stmt. at ¶ 15.)  Therefore, from February 9, 2009 until November 30, 2009, the trust was charged on a monthly basis for the cost of insurance for a total of close to $300,000 over the period of 10 months."  (Defs. 56.1 Stmt. at ¶ 15.)  Plaintiff agrees that it sent the Trust a "grace notice" on November 30, 2009, although plaintiff claims it was sent in error.  (Defs. 56.1 Stmt. at ¶ 14; Pl. 56.1 Stmt. at ¶ 14.)  Plaintiff admits only that it continued to maintain the Policy as "active" during the period of February through November 2009.  (Pl. 56.1 Stmt. at ¶ 15.)

It is undisputed that on February 12, 2010, the Trust received a "lapse notice" from plaintiff which plaintiff states was inadvertent.  (Defs. 56.1 Stmt. at ¶ 16; Pl. 56.1 Stmt. at

¶ 16.)  It is also undisputed that to date, the trust has not received a refund of any premiums paid, but plaintiff states that it continued to maintain the policy as "active" and that "premiums will be returned in accordance with controlling case law."  (Defs. 56.1 Stmt. at ¶ 18; Pl. 56.1 Stmt. at ¶¶ 17, 18.)

## DISCUSSION

**A. Summary Judgment Standard**

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "A fact is material if it might affect the outcome of the suit under the governing law."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citing *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* (citing *Roe,* 542 F.3d at 35).  Moreover, no genuine issue of material fact exists "unless there is sufficient

5

evidence favoring the nonmoving party for a jury to return a

verdict for that party.  If the evidence is merely colorable, or

is not significantly probative, summary judgment may be

granted."  *Anderson*, 477 U.S. at 249-50 (internal citations

omitted).

The moving party carries the burden of demonstrating

the absence of a genuine issue of material fact.  *FDIC v. Great

Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citing *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The court must

construe the facts in the light most favorable to the nonmoving

party and all reasonable inferences and ambiguities must be

resolved against the moving party.  *Id.*  Nevertheless, the

nonmoving party may not rest merely on allegations or denials

but must instead set out specific facts showing a genuine issue

for trial.  *See id.* ("To defeat a summary judgment motion, the

non-moving party must do more than simply show that there is

some metaphysical doubt as to the material facts, and may not

rely on conclusory allegations or unsubstantiated speculation.")

(citations omitted).

## B. Application

Defendants argue that because AIG continued to accept

premium payments following its discovery of alleged

misrepresentations in the Application for the Policy and after

announcing its intention to rescind the Policy and filing this

action, it has "ratified the Policy and has waived its right to rescind the policy."  (ECF No. 32-1, Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs. Mem."), at 6.)  In response, plaintiff argues that (1) it could not have ratified the Policy without an intention to do so, and (2) it did not waive its right to rescind the Policy because it "inadvertently" accepted the premiums from defendants.  (*See generally* ECF No. 33, Pl. Mem.)

### 1. Waiver

Defendants argue that plaintiff's acceptance of a premium payment "bars [plaintiff] from rescinding the policy and acts as a waiver."  (ECF No. 32-1, Defs. Mem., at 12.)  In response, plaintiff argues that its actions were consistent with its intention to rescind the Policy at all times, and that it did not waive its right to do so.  Plaintiff further asserts that waiver must be voluntary and intentional and that a finding of intent is necessarily an issue of fact that cannot be determined on a motion for summary judgment.  (ECF No. 33, Pl. Mem., at 11-12, 17.)

Under New York law,[1] waiver is the voluntary and intentional relinquishment of a known right.  *Nat'l Specialty*

---

[1] A district court sitting in diversity must apply the substantive law of the state in which it sits.  *Comer v. Titan Tool*, 888 F. Supp. 605, 608 (S.D.N.Y. 1995).  Accordingly, the parties do not dispute that New York law governs this dispute.

7

*Ins. Co. v. 218 Lafayette St. Corp. LLC*, No. 06 Civ. 4210, 2008

U.S. Dist. LEXIS 18172, at *18 (S.D.N.Y. Mar. 7, 2008)

(citations omitted).  Waiver requires evidence of a clear

manifestation of intent, and cannot be "lightly inferred."

*Mooney v. City of New York*, 219 F.3d 123, 131 (2d Cir. 2000).

*See also Port Distrib. Corp. v. Pflaumer*, 880 F. Supp. 204, 211–

12 (S.D.N.Y. 1995) (waiver must be "clear, unmistakable and

without ambiguity"); *Metro. Life Ins. Co. v. Blum*, 184 N.Y.S.2d

455, 457–58 (1st Dep't 1959) (negligence or oversight

insufficient to establish waiver).

        Intent is established if the insurer had "sufficient

information" regarding the grounds for rescission but chose to

not exercise its right to rescind.  *Chi. Ins. Co. v. Kreitzer &*

*Vogelman*, 265 F. Supp. 2d 335, 343 (S.D.N.Y. 2003).  In

particular, where an insurer accepts premiums after learning of

an event allowing for cancellation of the policy, the insurer

waives the right to cancel or rescind.  *See Sec. Mut. Life*

*Insur. Co. v. Rodriguez,* 880 N.Y.S.2d 619, 625 (1st Dep't 2009)

("Plaintiff's acceptance of premiums . . . after learning of the

alleged fraud allowing for cancellation of the policies

constituted a waiver of (or more properly an estoppels against)

its right to cancel or rescind the policies."); *Cont'l Ins. Co.*

*v. Helmsley Enter., Inc.,* 622 N.Y.S.2d 20, 20 (1st Dep't 1995)

("[P]laintiff waived its right to seek rescission of the

contract of insurance when it knowingly accepted premium payments for several months following discovery of the alleged misrepresentations upon which it claimed to have relied when it issued the policies."); *Scalia v. Equitable Life Assurance Soc.,* 673 N.Y.S.2d 730, 730-31 (2d Dep't 1998) ("[Defendant] waived its right to rescind the . . . insurance policy, by continuing to accept premium payments after it gained sufficient knowledge of the alleged misrepresentations upon which it claims to have relied when issuing the policy.").  The rationale behind this principle is that an attempt to both accept premiums and reserve the right to rescind a contract is unenforceable for lack of mutuality and timeliness.  *Cont'l Ins. Co.* 622 N.Y.S.2d at 20.

Here, it is undisputed that as early as February 2008, plaintiff began an investigation into possible misrepresentations in Salamon's application for an insurance policy.  (Defs. 56.1 Stmt. at ¶ 4; Pl. 56.1 Stmt. at ¶ 4.)  In the same month, Stephen Mostecek, an investigator working with plaintiff, sent a letter to defendant requesting that she contact him regarding "certain suspect aspects of your life policy application."  (ECF No. 32-3, Ex. B, Letter dated Feb. 26, 2008.)  One year later, on February 5, 2009, plaintiff sent a letter to Salamon stating, "We have determined that the Policy should be rescinded (terminated as of the Policy's effective date) due to material misrepresentations in your application for

life insurance coverage." (*Id.*, Ex. D, Letter dated Feb. 5,

2009.)  Specifically, the letter accused Salamon of

misrepresenting her personal income, household income, and net

worth, and falsely representing the property she owned.  (*Id.*)

Although it is clear that plaintiff was aware of defendants'

alleged misrepresentations by the date of its letter on February

5, 2009, it negotiated a premium check in the amount of $212,500

on February 9, 2009, and continued to charge a monthly fee to

the account each month until November 2009.  (Defs. 56.1 Stmt.

at ¶ 15.)  Accordingly, the court finds that plaintiff has

waived its right to rescind the Policy because (1) it had

"sufficient information" that there were misrepresentations in

the Application; and (2) it continued to accept payments after

discovering those misrepresentations.

        Plaintiff's arguments to the contrary are not

persuasive.  Plaintiff admits that its mainframe system

continued to maintain the policy in an "active" status between

February and November 2009, and that it "inadvertently" sent a

grace notice to the Trust on November 30, 2009, and a lapse

notice to the Trust on February 12, 2010.  (Pl. 56.1 Stmt. at

¶¶ 14-16.)  Plaintiff argues that it "intended to stop the

acceptance of premium payments" after sending the February 2009

rescission letter, but "could not effectively rescind the Policy

until the matter was resolved through the court system."  (ECF

No. 33, Pl. Mem., at 7.)  Thus, plaintiff contends that it did

not ratify the Policy because it did not intend to do so and/or

because it did not have full knowledge of the material facts

that were misrepresented.  (*See id.* at 12.)

        While plaintiff correctly states that "[r]atification

must be performed with full knowledge of the material facts

relating to the transaction and the assent must be clearly

established and may not be inferred from doubtful or equivocal

acts or language," (*id.* at 12), plaintiff fails to acknowledge

that "the required intent may be implied from knowledge of the

principal coupled with a failure to timely repudiate."  *In re.*

*Nig. Charter Flights Contract Litig.,* 520 F. Supp. 2d 447, 466

(E.D.N.Y. 2007) (citations omitted).  Here, it is clear that

plaintiff has known of and investigated the alleged

misrepresentations since February 2008, and although it stated

its intention to rescind the contract in February 2009, it did

not do so, but instead thereafter accepted a premium payment and

sent grace and lapse notices to the Trust.  Moreover, plaintiff

filed this action in January 2010, but did not serve discovery

demands before defendants moved for summary judgment in July

2010.  (ECF No. 33, Pl. Mem., at 9-10.)

        Finally, the court is not persuaded by distinctions

plaintiff attempts to draw between the instant case and the case

law cited by defendants.  For example, plaintiff complains that

11

the underlying decisions in *Cont'l Insurance Co.* and *Scalia* are

unpublished and urges the court to "disregard the factual

comparisons that the defendants draw from these cases."  (ECF

No. 33, Pl. Mem., at 17-18.)  However, plaintiff fails to

present any case law disputing the legal principle set forth in

those cases, specifically, that an insurer cannot simultaneously

disclaim a contract and reap the benefits of that contract by

accepting premium payments.  (*Id.*)  Rather, plaintiff argues

that because it intends to return the applicable premium payment

if rescission is granted, and because under New York law

premiums do not have to be returned prior to trial, the

underlying premise of *Cont'l Insurance Co.* and *Scalia* is

inapplicable.  (ECF No. 33, Pl. Mem., at 17-18.)  Plaintiff's

promise to return the premium in the future, however, does not

change the underlying principle that acceptance of the premium

precludes plaintiff from now requesting rescission of the

Policy.

Plaintiff also attempts to distinguish *S.E.C. v.

Credit Bancorp, Ltd.*, 147 F. Supp. 2d 238 (S.D.N.Y. 2001), from

the instant case.  Defendants argue that *S.E.C.* supports its

view that an insurer is deemed to have ratified a policy, and

cannot later move to rescind the policy, once it is "on notice

of evidence indicating fraud and fails to move further by

investigation or rescission."  (ECF No. 32-1, Defs. Mem., at

13.)  Plaintiff attempts to distinguish the *S.E.C.* case on two

theories.  First, plaintiff argues that whereas in *S.E.C.,* the

court only came to the conclusion that the insurer had ratified

the policy after the parties had engaged in "significant

discovery," here, the court cannot make the same determination

because, inexplicably, plaintiff and defendants did not engage

in any discovery during the seven months between service of the

summons and complaint and the service of defendants' summary

judgment motion.  (ECF No. 33, Pl. Mem., at 4, 13.)  The court

finds this distinction, as to plaintiff's assertion of

defendants' need for discovery, unpersuasive.  The court in

*S.E.C.* required discovery to assure itself that there was no

factual dispute regarding whether the insurer was fully aware of

the fraud.  Here, it is undisputed that the insurer was aware of

the alleged fraud, and that plaintiff did not take discovery.

Nor did plaintiff file a Fed. R. Civ. P. 56(d) affidavit setting

forth its need for discovery necessary to oppose defendants'

motion for summary judgment (prior to December 30, 2010,

designated a Rule 56(f) affidavit).  (*See* ECF No. 32-3, Exs. A

and B.)  Second, plaintiff argues that because unlike the

insurer in *S.E.C.,* it did not take affirmative steps to renew

the Policy after learning of the fraud, it should not be held to

have ratified the Policy.  (ECF No. 33, Pl. Mem., at 14.)  Yet,

plaintiff admits that it sent a "grace notice" on November 30,

13

2009 and "lapse notice" on February 12, 2010, and maintained the policy as "active."  (Pl. 56.1 Stmt. at ¶¶ 14-16.)  As discussed above, upon learning of misrepresentations, an insurer need not take affirmative steps to renew the Policy to be found to have ratified it.

Finally, the court rejects plaintiff's argument that it preserved its right to rescind the contract by taking "swift and immediate steps to disclaim the Policy," including sending a "rescission letter [which] specifically stated that American General did *not* intend to waive any rights."  (ECF No. 33, Pl. Mem., at 16-17.)  Although plaintiff sent a letter to Ms. Salamon on February 5, 2009 purportedly rescinding the policy, plaintiff's decision to negotiate check 9993 four days later is inconsistent with an intent to rescind.  Moreover, plaintiff sent a grace notice and lapse notice to defendants and continued to maintain the policy as "active," all of which actions are inconsistent with plaintiff's intent to rescind.  *See GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, 593 F. Supp. 2d 471, 485 (E.D.N.Y. 2009) (where insurer accepted premiums and stated the policy would remain in effect for approximately six months after learning of misstatements in the paperwork underlying an insurance policy, the court found plaintiff had waived its right to rescind).  An insurer's attempt to both accept premium payments and reserve the right to

14

rescind a contract is unenforceable for lack of mutuality and
timeliness.  *Cont'l Ins. Co.,* 622 N.Y.S.2d at 20.

Accordingly, for the reasons discussed above, the
court finds that plaintiff has waived the right to rescind the
Policy and grants defendants' motion for summary judgment.  In
the interest of completeness, the court will discuss plaintiff's
other argument in opposition to summary judgment below.

**2. Inadvertence**

Plaintiff argues that its acceptance of defendants'
premium payment was "inadvertent" and is not a basis for finding
that it waived its right to rescind the Policy.  (ECF No. 33,
Pl. Mem., at 19.)  In response, defendants correctly contend
that plaintiff's argument "that the acceptance and retention of
premiums was unintentional has been rejected by New York
courts."  (ECF No. 37, Reply Memorandum of Law in Support of
Defendants' Motion for Summary Judgment ("Defs. Reply") at 5.)
The court agrees.

As defendants point out, the fact that a corporation
is "large and complex and subject to interdepartmental
breakdowns in communication does not excuse or put a different
face on its conduct or omissions."  *Garbin v. Mut. Life Insur.
Co.,* 356 N.Y.S.2d 741, 742 (1st Dep't 1974).  Nor does the
excuse that rejecting the premium payment would have been
"extremely burdensome," (*see* ECF No. 33, Pl. Mem., at 19),

15

provide a proper basis for avoiding waiver.  *See D'Onofrio v. Safeco Ins. Co. of America,* 417 N.Y.S.2d 778 (2d Dep't 1979) (reversing lower court's judgment in favor of insurer because it cashed a premium payment, even though it did so unintentionally).  Accordingly, despite plaintiff's inadvertence in negotiating defendants' premium check and sending grace and lapse notices, it has waived the right to rescind the Policy.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.  The Clerk of Court is respectfully requested to enter judgment in favor of defendants, to dismiss plaintiff's complaint in its entirety, and to close the case.  Any notice of appeal to the Second Circuit must be filed with the district court within 30 days after the judgment is entered.  Fed. R. App. P. 4(a)(1)(B).

**SO ORDERED.**

Dated:     March 16, 2011
           Brooklyn, New York


                                    _____/s/_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York

16